GEORGE A. RILEY (S.B. No. 118304)
MICHAEL F. TUBACH (S.B. No. 145955)
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, California  94111-3828
Telephone:    (415) 984-8700
Facsimile:     (415) 984-8701
E-Mail:         griley@omm.com
                    mtubach@omm.com

Attorneys for Nominal Defendant APPLE INC. and Defendants
TIMOTHY D. COOK, WILLIAM V. CAMPBELL, MILLARD
DREXLER, ARTHUR D. LEVINSON, ROBERT A. IGER,
ANDREA JUNG, FRED D. ANDERSON and THE ESTATE OF
STEVEN P. JOBS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| R. ANDRE KLEIN, on behalf of himself and all other stockholders of APPLE INC., <br><br> Plaintiff, <br><br> vs. <br><br> TIMOTHY D. COOK, WILLIAM V. CAMPBELL, MILLARD ("MICKEY") DREXLER, ARTHUR D. LEVINSON, ROBERT A. IGER, ANDREA JUNG, FRED D. ANDERSON, ESTATE OF STEVEN P. JOBS, deceased, and DOES 1-30, inclusive, <br><br> Defendants, <br><br> -and- <br><br> APPLE INC., a California corporation, <br><br> Nominal Defendant. | Case No. 5:14-cv-03634-EJD <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:         May 14, 2015 <br> Time:         9:00 a.m. <br> Courtroom: 4 - 5th Floor <br> Judge:        Honorable Edward J. Davila |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

 **PLEASE TAKE NOTICE** that on May 14, 2015, at 9:00 a.m., nominal defendant Apple Inc. ("Apple" or the "Company") and defendants Timothy D. Cook, William V. Campbell, Millard Drexler, Arthur D. Levinson, Robert A. Iger, Andrea Jung, Fred D. Anderson and the Estate of Steven P. Jobs (collectively with Apple, "Defendants") will and hereby do move for an order dismissing with prejudice the Verified Shareholder Derivative Complaint (the "Complaint").[1]

 The motion seeks dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 9(b), 12 and 23.1 on the grounds that plaintiff did not make a demand on Apple's Board of Directors (the "Board") before filing the Complaint and plaintiff has failed to allege particularized facts demonstrating that the required demand would have been futile.  Accordingly, plaintiff lacks standing to proceed with this derivative action.  The motion also seeks dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12 on the grounds that the Complaint fails to state a cause of action against any Defendant and asserts time-barred claims.  This motion is based on this notice, the accompanying memorandum of points and authorities, the declaration of Vivi Lee with attached exhibits and request for judicial notice submitted herewith, all other papers on file with the Court, oral argument, and such other matters as may be presented in connection with the hearing.

**ISSUES TO BE DECIDED (L.R. 7-4)**

 (1) Whether plaintiff has standing to sue on Apple's behalf where he has failed to

---

[1] Plaintiff purports to sue the Estate of Steven P. Jobs pursuant to California Probate Code sections 550 and 552 to recover against insurance policies that may have covered Jobs.  The primary directors' and officers' liability insurance company, Zurich American Insurance Company, has authorized this filing on behalf of the Estate.  O'Melveny & Myers represents the Estate and does not represent the insurance companies.  The filing of this motion on behalf of the Estate is not intended to, and does not, waive any terms or conditions in the policies, or any challenges any insurance company may have to the sufficiency of the service of process, personal jurisdiction or any other FRCP 12(b) or other defense to any insurance company's liability for the asserted claims.  It is the Estate's understanding that the insurers have reserved all rights and coverage defenses.

allege particularized facts demonstrating that a majority of the directors had any involvement in or awareness of the alleged misconduct and thus face a substantial likelihood of liability that prevents them from objectively considering a litigation demand.

(2)     Whether causes of action that do not specify or substantiate any charges of specific wrongdoing against each individual can state cognizable claims for relief.

(3)     Whether claims that expired prior to the filing of the suit should be dismissed.

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1

# TABLE OF CONTENTS

2

**Page**

3

INTRODUCTION ..................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND................................................. 2

4

ARGUMENT ........................................................................................................... 4

5

I.     THE COMPLAINT DOES NOT DEMONSTRATE THE
       EXTRAORDINARY CIRCUMSTANCES NECESSARY TO DIVEST

6      THE BOARD OF ITS AUTHORITY.................................................... 4

7      A.     The Complaint Must Demonstrate, With Factual Particularity As
              To Each Director, Why A Majority Of The Board Cannot

8             Objectively Evaluate A Demand................................................... 4

       B.     The Complaint Does Not Plead Particularized Facts Establishing

9             That A Demand On Apple's Board Would Have Been Futile................... 6

10            1.     The Complaint Does Not Allege That Demand Was Futile
                     With Respect To Gore, Sugar And Wagner................................. 7

11            2.     The Conclusory Allegations Against Jung Do Not Establish

12                   That Demand Would Have Been Futile..................................... 7

13            3.     The Complaint Does Not Allege Any Involvement By Iger
                     In Any Improper Conduct As A Director Of Apple. ..................... 8

14            4.     The Conclusory Allegations Against Cook Do Not Establish
                     That Demand Would Have Been Futile..................................... 9

15            5.     The Conclusory Allegations Against Drexler Do Not

16                   Establish That Demand Would Have Been Futile. ..................... 10

              6.     The Conclusory Allegations Against Levinson Do Not
17                   Establish That Demand Would Have Been Futile. ..................... 11

18     C.     No Current Director Faces A Substantial Likelihood Of Personal
              Liability For The Alleged Proxy Violations. ............................... 12

19     II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ANY
              DEFENDANT............................................................................... 15

20     III.   PLAINTIFF'S CLAIMS ARE TIME-BARRED................................. 18

21

CONCLUSION ..................................................................................................... 20

22

23

24

25

26

27

28

DEFS. MOT. TO DISMISS & MPA IN
                                                  SUPPORT THEREOF - 5:14-CV-03634-EJD

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
225 Cal. App. 4th 1451 (2014) ............................................................................................. 19

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984) ....................................................................................................... 4

*Beam v. Stewart*,
845 A.2d 1040 (Del. 2004) ...................................................................................................... 5

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000) ................................................................................................... 5, 17

*Desaigoudar v. Meyercord*,
223 F.3d 1020 (9th Cir. 2000)............................................................................................... 13

*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007).......................................................................... 10, 11, 12, 17

*Gen. Elec. v. Cathcart*,
980 F.2d 927 (3d Cir. 1992)............................................................................... 13, 14, 15, 16

*Glazer v. Zapata Corp.*,
658 A.2d 176 (Del. Ch. 1993)............................................................................................... 17

*Guttman v. Huang*,
823 A.2d 492 (Del. Ch. 2003).................................................................................... passim

*In re Abbott Labs. Derivative S'holder Litig.*,
126 F. Supp. 2d 535 (N.D. Ill. 2000) ...................................................................................... 6

*In re Caremark Int'l, Inc. Derivative Litig.*,
698 A.2d 959 (Del. Ch. 1996)............................................................................................... 17

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009)............................................................................................... 18

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999).............................................................................................. 5, 7

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964)............................................................................................................... 13

*Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90 (1991)............................................................................................................. 4, 5

*Laborers' Local v. Intersil*,
868 F. Supp. 2d 838 (N.D. Cal. 2012) .................................................................................... 7

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002)............................................................................................... 13

*Marvin H. Maurras Revocable Trust v. Bronfman*,
Nos. 12 C 3395, 12 C 6019, 2013 WL 5348357 (N.D. Ill. Sept. 24, 2013)........................... 8

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970)............................................................................................................... 13

*Oakland Raiders v. NFL*,
93 Cal. App. 4th 572 (2001) ................................................................................................... 4

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1

*Princo Corp. v. Int'l Trade Comm'n*,
    616 F.3d 1318 (Fed. Cir. 2010)................................................................................ 9

2

3

*Rales v. Blasband*,
    634 A.2d 927 (Del. 1993) ........................................................................................ 5

4

*Rattner v. Bidzos*,
    No. Civ. A. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ...................... 8, 10

5

*Saginaw Police & Fire Pension Fund v. Hewlett-Packard Co.*,
    No. 5:10–CV–4720 EJD, 2012 WL 967063 (N.D. Cal. Mar. 21, 2012) ............... 17

6

*Seminaris v. Landa*,
    662 A.2d 1350 (Del. Ch. 1995)................................................................................ 5

7

8

*Shields v. Singleton*,
    15 Cal. App. 4th 1611 (1993) ......................................................................... 4, 5, 7

9

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ...................................................................................... 17

10

*Taylor v. Kissner*,
    893 F. Supp. 2d 659 (D. Del. 2012) ....................................................................... 17

11

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976)......................................................................................... 13, 15

12

13

*Zoumboulakis v. McGinn*,
    Case No. 5:13–CV–02379–EJD, 2014 WL 3926565 (N.D. Cal. Aug. 7, 2014) ........ 14, 15, 16

**STATUTES**

14

15 U.S.C. § 77m............................................................................................................ 19

15

15 U.S.C. § 78u–4(b)(1).............................................................................................. 13

16

Cal. Corp. Code § 204(a)(10)........................................................................................ 6

17

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ................................................................................................. 6, 16

18

Fed. R. Civ. P. 23.1(b)(3)............................................................................................. 4

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**INTRODUCTION**

3    In an attempt to capitalize on a federal antitrust class action being litigated by other

4   plaintiffs against Apple and other technology companies, purported Apple shareholders filed

5   putative derivative complaints in Santa Clara Superior Court alleging that certain current and

6   former Apple officers and directors breached their fiduciary duties by causing or allowing Apple

7   to enter into improper non-solicitation agreements with other companies.  Nearly five months

8   later, plaintiff R. Andre Klein filed his substantially identical Complaint in this Court challenging

9   the same purported conduct.  A basic principle of corporate law is that the corporation itself, not

10  its shareholders, decides whether to bring claims against third parties.  Before a shareholder can

11  usurp that right, he or she must make a demand on the board of directors to bring such claims.

12  Alternatively, the shareholder must demonstrate that such demand would have been futile because

13  a majority of the board is not disinterested and independent.

14    Plaintiff has done neither.  Plaintiff admits he made no demand on the Board to

15  investigate his allegations before filing this action.  Plaintiff contends such demand would have

16  been futile because Apple's "top executives and directors" participated in the alleged conduct and

17  are therefore not disinterested and independent.  Once the Court strips away the unsupported

18  inferences and conclusory assertions of wrongdoing—as well-established law requires—the

19  Complaint is reduced to allegations regarding communications involving only former Apple CEO

20  and director Steve Jobs.  Jobs passed away in October 2011, and his knowledge cannot be

21  imputed to other Board members.

22    Apple had eight directors at the time this action was filed—Timothy Cook, Millard

23  Drexler, Albert Gore, Jr., Robert Iger, Andrea Jung, Arthur Levinson, Ronald Sugar and Susan

24  Wagner.  The Complaint contains no factual allegations that any of these directors had any

25  involvement in, or even knew about, any purported non-solicitation agreements or Apple's cold-

26  calling practices.  Instead, the Complaint simply concludes, primarily based on these directors'

27  "numerous professional and personal relationships with other members of the Board" (*e.g*.,

28  Compl. ¶¶ 149, 152), that they were incapable of considering a demand.  The law squarely rejects

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1  such allegations as insufficient to excuse demand.  The Complaint also concludes that improper

2  agreements must have existed between Apple and three companies where Board members were

3  employed or served on the board (Drexler at J. Crew, Cook at Nike and Levinson at Genentech)

4  simply because those companies appeared on Apple's "do not cold call" list.  But the Complaint

5  offers no facts—nor could it—that J. Crew's, Nike's and Genentech's appearance on Apple's list

6  was anything other than a unilateral decision by Apple to avoid the apparent conflict of interest

7  created by active solicitation from Board members' companies.  Because the Complaint does not

8  allege sufficient facts to raise a reasonable doubt as to any director's disinterestedness and

9  independence, demand on the Board is not excused.  A majority of Apple's eight-member Board

10  was unquestionably capable of impartially considering a demand.  Defendants' motion to dismiss

11  should be granted without leave to amend.[2]

12  ### FACTUAL AND PROCEDURAL BACKGROUND

13  On September 24, 2010, the Department of Justice (the "DOJ") announced the filing of a

14  complaint against Apple and other technology companies for alleged violations of the federal

15  antitrust laws in connection with purported bilateral agreements not to recruit from each other.

16  Compl. ¶ 96; Lee Decl., Exs. A, B.  As the filings in that action explain, numerous categories of

17  bilateral agreements are allowed under the antitrust laws, including those "reasonably necessary

18  for (i) contracts with resellers or OEMs; (ii) contracts with providers or recipients of services . . .;

19  or (iii) function of a legitimate collaboration agreement, such as joint development, technology

20  integration, joint ventures, joint projects (including teaming agreements), and the shared use of

21  facilities."  Lee Decl., Ex. C at V.A.5.  The filings also reiterate that the antitrust laws are not

22  implicated regarding unilateral decisions "not to consider applications from employees of another

23  person, or to solicit, cold call, recruit or hire employees of another person."  *Id*. at V.E.  Without

24  admitting any facts or liability, Apple stipulated to entry of a Proposed Final Judgment, which

25  was entered by the court on March 18, 2011.  Lee Decl., Ex. C at 2.  Apple paid no monetary fine

26

27  _____

[2] Because plaintiff's Complaint is largely a copycat complaint of the earlier-filed state court actions, Defendants will also be filing a motion to stay these proceedings pending the outcome of those state court actions.

28

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1    in connection with the stipulated judgment.  The DOJ complaint and settlement were widely

2    covered by traditional media and the numerous websites dedicated to Apple news.  *Id.*, Exs. L-U.

3            On May 4, 2011, seven months after the DOJ action was filed, a former employee of

4    Lucasfilm filed a purported class action lawsuit against Apple and the other companies named in

5    the DOJ action alleging the companies conspired to fix and restrict employee salaries in violation

6    of the antitrust laws.  Compl. ¶ 98.  Beginning on March 14, 2014, after the class action lawsuit

7    had been litigated for several years, purported Apple shareholders filed derivative actions in Santa

8    Clara Superior Court (the "State Derivative Action"), alleging that Defendants caused or

9    permitted Apple to violate the antitrust laws.  Lee Decl., Exs. D-F.  The three actions filed in state

10   court were subsequently consolidated.  *Id.*, Ex. G.  The Complaint before this Court was not filed

11   until August 11, 2014, nearly 5 months after the first action in state court was filed.

12           Copying liberally from the complaints filed in the State Derivative Action, plaintiff in this

13   action alleges that Apple's "top executives and directors" entered into improper non-solicitation

14   agreements with executives at technology companies such as Adobe, Google and Intel.  *Id.* ¶ 2.

15   These purported agreements allegedly suppressed employee wages and impeded technological

16   and economic growth.  *Id.* ¶ 118.  Apple was allegedly harmed by a loss of innovation, the cost of

17   entering into the DOJ settlement, the cost of defending the class action, and a loss of reputation.

18   *Id.* ¶¶ 114-120.  Plaintiff also alleges that Apple's 2012, 2013 and 2014 proxy statements falsely

19   described the qualifications of the directors in connection with their reelections because the proxy

20   statements did not "state that the Individual Defendants caused Apple to engage in anti-poaching

21   practices, that the DOJ had been investigating Apple's potential violations of antitrust laws, and

22   that the Individual Defendants' conduct may lead to criminal charges and civil liability against

23   and cause substantial damages to Apple."  *Id.* ¶¶ 101, 106, 111.  Notwithstanding the allegations

24   in the Complaint, no court has ever found that Apple or the other defendants violated the antitrust

25   laws in connection with the challenged recruiting practices.

26           Plaintiff here did not make a pre-suit demand on Apple's Board to investigate the

27   allegations.  Plaintiff instead contends that demand on the Board would have been futile because

28   a majority of directors face a substantial risk of personal liability for their alleged involvement in

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

the purported agreements and allegedly lack independence from each other. *Id*. ¶¶ 145-61.

Despite repeatedly quoting the myriad internal documents made public in the class action in his

75-page Complaint, plaintiff does not identify any specific facts implicating any of Apple's Board

in any of the challenged conduct. The Complaint identifies no current Apple director as having

been involved in any communications about the challenged recruiting practices. *Id*. ¶¶ 145-61.

Plaintiff instead relies on excerpts of correspondence involving Jobs and simply imputes his

purported actions and knowledge to the current directors because of their relationships with Jobs.

*See, e.g.*, *id*. ¶¶ 151-52, 154.

## ARGUMENT

I.     THE COMPLAINT DOES NOT DEMONSTRATE THE EXTRAORDINARY
       CIRCUMSTANCES NECESSARY TO DIVEST THE BOARD OF ITS
       AUTHORITY.

   A.     The Complaint Must Demonstrate, With Factual Particularity As To Each
          Director, Why A Majority Of The Board Cannot Objectively Evaluate A
          Demand.

       A derivative plaintiff who has failed to make a demand on the corporation's board must

establish that making such a demand would have been futile. *See Aronson v. Lewis*, 473 A.2d

805, 811-12 (Del. 1984) ("demand requirement . . . exists at the threshold, first to ensure that a

stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike

suits"). For demand to be excused, a shareholder must allege with particularity facts that if taken

as true raise a reasonable doubt that (1) a majority of the directors are disinterested and

independent, or (2) the challenged transaction was otherwise "the product of a valid exercise of

business judgment." *Aronson*, 473 A.2d at 814; *Oakland Raiders v. NFL*, 93 Cal. App. 4th 572,

587 (2001); Fed. R. Civ. P. 23.1(b)(3)[3] (requiring plaintiffs to plead with particularity). If no

board decision is challenged, as is the case here, the second prong does not apply; only

---

[3] Federal courts considering demand futility allegations rely on the substantive law of the state of incorporation. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-109 (1991). Apple is a California corporation, but courts considering the demand requirement "may properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes." *Oakland Raiders*, 93 Cal. 4th at 586 n.5; *accord Shields v. Singleton*, 15 Cal. App. 4th 1611, 1621 (1993) (concluding that the demand requirement in California and Delaware is identical).

1  interestedness or lack of independence of a majority of directors can excuse demand.  *Rales v.*

2  *Blasband*, 634 A.2d 927, 933-34 (Del. 1993).  Disinterestedness and independence are presumed,

3  and summary assertions unsupported by detailed facts carry no weight.  *In re Silicon Graphics,*

4  *Inc. Sec. Litig.*, 183 F.3d 970, 990 (9th Cir. 1999).  "[D]irectors are entitled to a *presumption* that

5  they are faithful in their fiduciary duties" and the "burden is upon the plaintiff in a derivative

6  action to overcome that presumption."  *Beam v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004).

7  Demand futility is not established unless "the court [is] apprised of ***facts specific to each director***

8  from which it can conclude that the particular director could or could not be expected to fairly

9  evaluate the claims of the shareholder plaintiff."  *Shields*, 15 Cal. App. 4th at 1622 (emphasis

10  added).  As courts have explained, "bare allegations of director wrongdoing without factual

11  support cannot excuse demand."  *Id*.  Unless a plaintiff can show sufficient particularized facts to

12  call a director's disinterestedness or independence into reasonable doubt, that director remains

13  fully capable of evaluating a litigation demand.  Demand is thus excused only under

14  "'extraordinary conditions,'" *Kamen*, 500 U.S. at 96 (citation omitted), that arise only when a

15  plaintiff supplies highly detailed facts showing demand to be futile.  *Brehm v. Eisner*, 746 A.2d

16  244, 254 (Del. 2000).

17      Courts long ago recognized that if merely naming the directors as defendants were

18  sufficient to excuse demand, the demand requirement would be a nullity.  *Seminaris v. Landa*,

19  662 A.2d 1350, 1355 (Del. Ch. 1995) (rejecting "discredited refrain" that directors would not

20  "'sue themselves'").  A director has a disabling interest only if specific facts show the director's

21  actions "were so egregious that a substantial likelihood of director liability exists."  *Id*. at 1354.

22  A "'mere threat'" is not sufficient.  *Rales*, 634 A.2d at 936 (citation omitted).  A "substantial

23  likelihood" of personal liability requires "well-pled, particularized allegations of fact detailing the

24  precise roles that these directors played at the company, the information that would have come to

25  their attention in those roles, and any indication as to why they would have perceived [the alleged

26  conduct]."  *Guttman v. Huang*, 823 A.2d 492, 503 (Del. Ch. 2003)

27      Plaintiff's burden is especially difficult to satisfy here because Apple's Articles of

28  Incorporation bar director liability for anything short of intentional misconduct, bad faith, self-

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1   dealing, or deliberate abdication of duties.  *See* Lee Decl., Ex. H, Article IV Sect. 1 (eliminating

2   director liability "to the fullest extent permissible under California law"); Cal. Corp. Code

3   § 204(a)(10) (permitting corporations to "eliminat[e] or limit[] the personal liability of a director

4   for monetary damages in an action brought by or in the right of the corporation for breach of a

5   director's duties to the corporation and its shareholders" except in cases of intentional

6   misconduct, bad faith, self-dealing, or deliberate abdication of duties); *In re Abbott Labs.*

7   *Derivative S'holder Litig.*, 126 F. Supp. 2d 535, 537 (N.D. Ill. 2000) (dismissing claims where all

8   claims for unintentional wrongs were barred by exculpatory clause).  As a result, plaintiff may

9   proceed only if he can supply particularized factual allegations showing a substantial likelihood

10  that a majority of Apple's directors engaged in conduct so egregious as to fall within the narrow

11  circumstances allowing for director liability.  *Id.* (holding that "'should have known' claims

12  cannot excuse demand" where directors are insulated from liability for negligence).  Because the

13  Complaint purports to allege fraudulent conduct (*see* Compl. ¶¶ 45, 176, 180, 184), such claims

14  must be alleged with particularity.  *See* Fed. R. Civ. P. 9(b).  The Complaint's conclusory

15  allegations fall far short of meeting these heightened requirements.

16      **B.      The Complaint Does Not Plead Particularized Facts Establishing That A
                 Demand On Apple's Board Would Have Been Futile.**

17

18          Plaintiff has not established that a majority of Apple's Board was incapable of impartially

19  considering a litigation demand.  When this action was filed, Apple's Board consisted of eight

20  individuals:  Timothy Cook, Millard Drexler, Albert Gore, Jr., Robert Iger, Andrea Jung, Arthur

21  Levinson, Ronald Sugar and Susan Wagner.  Plaintiff makes no allegations regarding Gore, Sugar

22  or Wagner and thus concedes these three directors could consider a litigation demand.  Plaintiff

23  contends demand would have been futile with respect to the remaining five directors (Cook,

24  Drexler, Iger, Jung and Levinson) because they allegedly "engaged in the wrongdoing alleged [in

25  the Complaint]" (Compl. ¶ 156) and allegedly face a substantial likelihood of personal liability

26  for their alleged conduct.  *Id.* ¶¶ 145-61.  None of these directors, however, is alleged to have had

27  any communications regarding the recruitment of Apple employees or any purported non-

28  solicitation agreements.  The Complaint contains no particularized facts establishing any

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

knowledge of or involvement by any current director in any of the challenged conduct. In the absence of actual facts, plaintiff instead relies on attenuated inferences and conclusory allegations in a failed attempt to implicate the directors' disinterestedness and independence. Because such allegations carry no weight, Defendants' motion to dismiss must be granted. *See Shields*, 15 Cal. App. 4th at 1622 (rejecting general allegations indiscriminately leveled against all directors); *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d at 990 (same).

### 1. The Complaint Does Not Allege That Demand Was Futile With Respect To Gore, Sugar And Wagner.

Plaintiff concedes that demand would not have been futile with respect to Gore, Sugar and Wagner, who are not alleged to have had any involvement in any purported agreements and are not named as defendants.

### 2. The Conclusory Allegations Against Jung Do Not Establish That Demand Would Have Been Futile.

Plaintiff identifies no facts indicating any involvement in or knowledge of any purported agreements by Jung. Plaintiff attempts to implicate Jung solely because she was a director at the time of the DOJ investigation and purportedly had familiarity with government investigations in her former role as CEO and Chairman of Avon. Compl. ¶ 155. A director's ability to consider a demand is not compromised solely because she served on the board at the time of the alleged conduct. Rote allegations of participation in the challenged conduct are not sufficient to excuse demand. *See Shields*, 15 Cal. App. 4th at 1621 (rejecting conclusory allegations that directors "participated in, conspired in, or aided and abetted the criminal and fraudulent activities at issue"); *Laborers' Local v. Intersil*, 868 F. Supp. 2d 838, 845-46 (N.D. Cal. 2012) (noting that demand is not excused by merely pleading that the directors participated in the challenged conduct). The Complaint contains no facts suggesting Jung had any awareness of the challenged conduct prior to the DOJ's investigation. *See* Compl. ¶¶ 39 (alleging generically that Jung "knowingly or recklessly approved Apple's anti-competitive 'no poaching' policies" but identifying no actual involvement by Jung), 155 (alleging generically that "Jung and other Individual Defendants caused Apple to engage in practices that violated antitrust laws by agreeing

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1   to refrain from hiring employees of Apple's competing companies" but identifying no specific

2   conduct by Jung).  Completely unrelated investigations regarding Avon's international practices

3   (*see id*. ¶ 155) have no bearing on Jung's ability to consider a demand as a director of Apple.  The

4   Complaint does not establish that demand on Jung would have been futile.

5                    **3.       The Complaint Does Not Allege Any Involvement By Iger In Any
                                Improper Conduct As A Director Of Apple.**
6

7          Like Jung, Iger is not alleged to have had any involvement in any alleged anticompetitive

8   recruiting practices as a director of Apple.  Iger did not join Apple's Board until November 2011,

9   well after the DOJ settlement regarding the alleged practices.  *See* Compl. ¶¶ 5, 36.  He could not

10  have violated any duties owed to Apple regarding practices that ended before he joined the Board.

11  The only facts plaintiff can muster to support his assertion that Iger somehow faces a substantial

12  risk of personal liability if he were to authorize a lawsuit on behalf of Apple is that he is the CEO

13  of The Walt Disney Company, which acquired Pixar in 2006, and was a friend of Jobs.  *Id*. ¶ 154.

14  From this, plaintiff contends "[i]t is reasonable to infer that Iger was aware of [alleged

15  agreements between Apple and Pixar] before even joining the Apple Board."  *Id.*  Courts have

16  soundly rejected attempts to charge directors with knowledge of alleged corporate activity solely

17  on the basis of their status as directors or their service in various capacities.  *See Rattner v.*

18  *Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *11 (Del. Ch. Oct. 7, 2003).  The Complaint

19  contains no factual allegations indicating that anyone at Disney or Pixar ever communicated with

20  Iger about any purported agreements.  Corporate officials are not presumed to know everything

21  their subordinates know.  *See Marvin H. Maurras Revocable Trust v. Bronfman*, Nos. 12 C 3395,

22  12 C 6019, 2013 WL 5348357, at *5 (N.D. Ill. Sept. 24, 2013).  Plaintiff's bald assertion that Iger

23  "ratified" purported agreements between Pixar and Apple (Compl. ¶ 154) is entirely without

24  support and must be disregarded.

25         Knowledge also cannot be imputed based simply on Iger's personal friendship with Jobs.

26  *See* Compl. ¶¶ 37, 154.  The fact that Jobs and Iger discussed Disney movies and considered each

27  other friends does not support a reasonable inference that they would have discussed Apple's

28

DEFS. MOT. TO DISMISS & MPA IN
                                            SUPPORT THEREOF - 5:14-CV-03634-EJD

recruiting practices, let alone the alleged non-solicitation agreements.  The Complaint does not

establish that demand on Iger would have been futile.

**4.      The Conclusory Allegations Against Cook Do Not Establish That Demand Would Have Been Futile.**

The Complaint contains no factual allegations supporting a finding that Cook faces a

substantial likelihood of personal liability in connection with the challenged conduct.  Indeed, the

facts do not support a reasonable inference that Cook had any awareness of the challenged

conduct.  The allegations against Cook consist entirely of unsupported inferences based on his

roles at Apple and Nike and his relationship with Jobs.  Compl. ¶¶ 20-22, 151.  Plaintiff

"assumes" Cook "encouraged and facilitated" the creation of a purported no-recruiting agreement

between Apple and Nike because Cook was an Apple executive and Nike director.  The

Complaint does not, however, allege any facts to support a finding that a bilateral non-solicitation

agreement even existed between Apple and Nike.  The only fact plaintiff identifies is that Nike

appeared with the notation "Common board members" on Apple's list of companies whose

employees Apple's recruiters would not cold call.  *Id*. ¶¶ 21, 92.  From this one fact, plaintiff

concludes that Apple had an illegal no-cold-calling agreement with Nike.  *Id*.  This conclusion is

not reasonable based on the facts and law.  The DOJ and case law confirm that unilateral

decisions not to cold call employees of other companies are entirely legal and, under certain

circumstances, bilateral no-cold-calling agreements are also legal.  *See, e.g.*, *Princo Corp. v. Int'l*

*Trade Comm'n*, 616 F.3d 1318, 1336 (Fed. Cir. 2010); Lee Decl., Ex. C at V.  Plaintiff does not

identify any facts to support an inference that Nike's inclusion on the list was anything other than

a legal unilateral decision by Apple to avoid the apparent conflict of interest created by active

solicitation from a company with which an Apple executive was affiliated.

Indeed, the allegations with respect to Cook reveal the convoluted and illogical arguments

plaintiff must make to try to manufacture liability where none exists.  Plaintiff notes that "Nike is

a retail company and would not likely do a lot of recruiting at Apple for technical positions"

(Compl. ¶ 151)—effectively acknowledging that a bilateral non-solicitation agreement between

the companies would make little sense.  Yet instead of drawing the more reasonable inference

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1   that no agreement existed between Apple and Nike, plaintiff contends that the irrationality of any

2   purported agreement must mean a Nike board member was needed to forge one.  *Id.*  The

3   Complaint's allegations do not support the inference plaintiff attempts to draw.  Plaintiff cannot

4   infer involvement in alleged misconduct where he has failed to sufficiently allege the existence of

5   any misconduct in the first place.  *See Desimone v. Barrows*, 924 A.2d 908, 945 (Del. Ch. 2007)

6   (rejecting demand futility argument where neither purported wrongdoing nor directors'

7   knowledge of wrongdoing was sufficiently alleged).  Plaintiff fails to plead actual facts

8   supporting an inference that Nike had any agreement with Apple, that Cook had any involvement

9   in or even knew of Apple's unilateral decision to place Nike on its list, or even that he knew

10  Apple had a do not cold call list.

11       Cook's knowledge cannot be inferred simply because he was an Apple executive and

12  purportedly had a close relationship with Steve Jobs.  *See Rattner*, 2003 WL 22284323, at *11

13  (rejecting conclusory allegations of knowledge based on service in various capacities); *Desimone*,

14  924 A.2d at 943 (noting that the "law does not permit the wholesale imputation of one director's

15  knowledge to every other for demand excusal purposes"); *Guttman*, 823 A.2d at 499 (rejecting

16  "cursory contentions of wrongdoing as a substitute for the pleading of particularized facts").  The

17  Complaint contains no factual allegations suggesting Cook and Jobs ever discussed the challenge

18  conduct.  The Complaint's allegations do not support a finding that demand on Cook would have

19  been futile.

20              **5.       The Conclusory Allegations Against Drexler Do Not Establish That
                         Demand Would Have Been Futile.**
21

22       The allegations against Drexler consist of formulaic and unsupported assertions of lack of

23  independence and bare allegations of wrongdoing.  Plaintiff contends Drexler faces a substantial

24  risk of personal liability because he either created or ratified purported anticompetitive

25  agreements between Apple and J. Crew.  Compl. ¶ 153.  The Complaint does not, however, allege

26  facts to support a finding that bilateral non-solicitation agreements existed between Apple and J.

27  Crew.  The only fact alleged by plaintiff is that J. Crew—a retail company—appeared on Apple's

28  list of companies whose employees Apple's recruiters would not cold call with the notation

- 10 -
                                         DEFS. MOT. TO DISMISS & MPA IN
                                         SUPPORT THEREOF - 5:14-CV-03634-EJD

"common board members."  *Id*.  As discussed above, this one fact is not sufficient to support a

finding that Apple had an improper agreement with J. Crew.  *See supra* § I.B.4; Lee Decl., Ex. C

at V (confirming that unilateral decisions not to recruit from a company are legal).  The facts do

not support a finding that J. Crew's inclusion on the list was anything other than a unilateral

decision by Apple not to recruit from J. Crew to avoid the apparent conflict of interest created by

active solicitation from a Board member's company—an entirely legal action.  The Complaint

contains no allegations supporting an inference that Drexler was even aware of Apple's decision

not to recruit from J. Crew or had any prior knowledge of the challenged conduct.  Drexler cannot

be presumed to have knowledge simply because he knew Jobs.  *See Desimone*, 924 A.2d at 943;

*Guttman*, 823 A.2d at 499.

Plaintiff also attempts to implicate Drexler's ability to consider a demand with rote

allegations of lack of independence that courts consistently reject.  Drexler allegedly lacks

independence because he "maintains numerous professional and personal relationships with other

members of the Board."  Compl. ¶ 152.  The Complaint, however, identifies no current Board

members with whom Drexler allegedly maintains such relationships.  *See id*. (noting only that

Drexler and former director Jobs were both formerly directors of Gap Inc.).  Because plaintiff

fails to allege particularized facts raising a reasonable doubt as to Drexler's disinterestedness and

independence, demand on Drexler cannot be excused.

### 6.    The Conclusory Allegations Against Levinson Do Not Establish That Demand Would Have Been Futile.

The Complaint does not contain sufficient particularized allegations to support a finding

that Levinson faces a substantial likelihood of personal liability or had any involvement in any

improper conduct.  Plaintiff contends Levinson cannot consider a demand because he was the

CEO Genentech, which allegedly had improper agreements with Apple and Google, on whose

board Levinson formerly served.  Compl. ¶¶ 149-50.  Plaintiff relies solely on Genentech's

inclusion on Apple's do not cold call list to support his allegation that Apple had an improper

agreement with Genentech.  *Id*.  As discussed above, a company's mere inclusion on Apple's list

is not sufficient to infer that an improper agreement existed.  *See supra* §§ I.B.4-5.  Plaintiff has

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1    not alleged any facts that justify an inference that Genentech's inclusion on the list was the result

2    of anything other than Apple's unilateral decision not to cold call Genentech employees to avoid

3    the apparent conflict of interest created by active solicitation from a Board member's company.

4    *See* Compl. ¶ 92.  And whether or not an improper agreement existed between Genentech and

5    Google—which the Complaint also does not sufficiently allege—is irrelevant to whether

6    Levinson would face a substantial likelihood of liability if he were to authorize a lawsuit by

7    Apple.

8         Plaintiff's attempt to implicate Levinson in the agreement between Apple and Google is

9    also not supported by well-pleaded facts.  The Complaint alleges that Levinson was a close friend

10   and colleague of Jobs (Compl. ¶ 31) and discusses Levinson's connections with Google.  *Id*. ¶ 33.

11   However, the Complaint fails to plead any facts establishing that Jobs or anyone at Google ever

12   discussed a non-solicitation agreement with Levinson.  Levinson's involvement cannot be

13   inferred based solely on his positions at Apple and Google.  *See supra* §§ I.B.3-4; *Desimone*, 924

14   A.2d at 943.

15        Plaintiff's attempt to implicate Levinson's independence also fails.  Plaintiff contends

16   Levinson "maintains numerous professional and personal relationships with other members of the

17   Board," but he identifies no current Apple directors with whom these purported relationships

18   exist.  Compl. ¶ 149.  Instead, plaintiff focuses on Levinson's relationship with former director

19   Eric Schmidt, who left Apple's Board more than five years ago.  *Id*.  Allegations regarding

20   Levinson's relationship with a Google director and executive have no bearing on Levinson's

21   independence from Apple directors and does not implicate his ability to independently consider a

22   demand.  The Complaint does not establish that demand on Levinson would have been futile.

23   **C.    No Current Director Faces A Substantial Likelihood Of Personal Liability
             For The Alleged Proxy Violations.**

24

25        To the extent plaintiff contends the current directors' purported liability for violations of

26   section 14(a) of the Exchange Act renders them unable to consider a demand, that contention also

27   fails.  To state a section 14(a) claim, the plaintiff must establish that:  (1) a proxy statement

28   contained a material misrepresentation or omission, (2) the misrepresentation caused an injury,

and (3) the proxy solicitation was an essential link in the accomplishment of the transaction at issue. *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 383 (1970); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). Under the Private Securities Litigation Reform Act, a plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1034 (9th Cir. 2002) (quoting 15 U.S.C. § 78u–4(b)(1)). An omission is only material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). Speculative disclosures are not required. *Gen. Elec. v. Cathcart*, 980 F.2d 927, 935-36 (3d Cir. 1992).

Plaintiff challenges the elections of the directors based on the proxy statements issued in January 2012, January 2013 and January 2014. Compl. ¶¶ 99-113; Lee Decl., Exs. I-K. The three alleged omissions—that Defendants caused Apple to violate the antitrust laws, that the DOJ had been investigating Apple's potential violation of antitrust laws, and that the Defendants' conduct could lead to criminal charges and civil liability against Apple (Compl. ¶¶ 101, 106, 111)—would not have been appropriate to include in Apple's proxy solicitations regarding the election of the directors because they are either untrue, immaterial or speculative. The Supreme Court has cautioned:

> [T]he disclosure policy embodied in the proxy regulations is not without limit. . . . Some information is of such dubious significance that insistence on its disclosure may accomplish more harm than good. . . . [I]f the standard of materiality is unnecessarily low, not only may the corporation and its management be subjected to liability for insignificant omissions or misstatements, but also management's fear of exposing itself to substantial liability may cause it to simply bury the shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decisionmaking.

*TSC Indus., Inc.*, 426 U.S. at 448-49 (alteration in original). Inclusion of the purported "facts" identified by plaintiff actually could have rendered Apple's proxy statements false and

1    misleading.

2          First, plaintiff has identified no facts supporting his assertion that "Defendants caused

3    Apple to engage in anti-poaching practices." Compl. ¶¶ 101, 106, 111. As discussed above, the

4    Complaint is devoid of facts indicating any involvement in or awareness of the challenged

5    conduct by any current director. *See supra* § I.B. The directors cannot be charged with failing to

6    disclose something that is simply untrue. *See Zoumboulakis v. McGinn*, Case No. 5:13–CV–

7    02379–EJD, 2014 WL 3926565, at *11-*12 (N.D. Cal. Aug. 7, 2014) (rejecting section 14(a)

8    claim based on an alleged failure to disclose the audit committee members' purported failure to

9    discharge their duties because plaintiffs had not sufficiently pled that committee members had

10   failed to discharge their duties).

11          Second, that the DOJ had investigated potential antitrust violations by *Apple* in 2010 is

12   immaterial to the qualifications of the directors in connection with their elections in 2012, 2013

13   and 2014.[4] No director was implicated by the DOJ's lawsuit, which was brought solely against

14   the Company. *See* Lee Decl., Exs. A, C. A reasonable shareholder would not consider litigation

15   against the Company material to the qualifications of the directors in deciding whether to reelect

16   the directors. *See Gen. Elec.*, 980 F.2d at 936 (distinguishing between litigation against the

17   company and litigation against the directors in evaluating a section 14(a) claim). The timing of

18   the events further highlights the immateriality of the existence of the DOJ investigation. The

19   DOJ announced the completion of its investigation and the settlement of the action against Apple

20   on September 24, 2010—more than a year before the first challenged proxy statement was filed

21   on January 9, 2012. The DOJ took no further action against Apple—and never took any action

22   against the directors. By January 9, 2012, January 7, 2013 and January 10, 2014, when the

23   challenged proxy statements were issued, information regarding the concluded DOJ investigation

24   was completely stale. Companies cannot be expected to disclose resolved litigation in their proxy

25   statements until the end of time. Doing so would render proxy statements cumbersome and

26

27   ─────────────────

28   [4] This purported omission is particularly nonsensical with respect to Iger, who did not join
     Apple's Board until well after the DOJ settlement had been announced. *See* Compl. ¶¶ 36, 96.

1  confusing and would obscure the information that is actually material to a shareholder's voting

2  decision. *See TSC Indus., Inc.*, 426 U.S. at 448-49 (cautioning against overdisclosure).

3      Third, the contention that Defendants should have included in their description of the

4  directors' qualifications that "the Individual Defendants' conduct may lead to criminal charges

5  and civil liability against and cause substantial damages to Apple" is specious. The Complaint

6  does not allege any facts indicating any involvement by any current director in the challenged

7  conduct. *See Zoumboulakis*, 2014 WL 3926565 at *11-*12. Moreover, no criminal charges have

8  ever been brought against Apple or anyone else relating to the challenged conduct. Speculative

9  disclosures are not required. *See Gen. Elec.*, 980 F.2d at 935-36. This purported omission is

10 untrue and speculative and has no bearing on the directors' qualifications. The proxy statements'

11 descriptions of the directors' qualifications and past experience were accurate and conveyed the

12 information a reasonable shareholder would consider material in making a voting decision.

13     Lastly, claims based on the 2012 and 2013 proxy statements have no bearing on the

14 demand analysis, as they must be dismissed as moot because the directors' terms from those

15 elections have lapsed. *See Gen. Elec.*, 980 F.2d at 934-35.

16 **II.     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST ANY DEFENDANT.**

17     The Complaint purports to allege five causes of action—one for an alleged violation of

18 section 14(a) of the Exchange Act and four based on a purported breach of fiduciary duty. As

19 demonstrated above, plaintiff's reliance on conclusory allegations and unsupported inferences is

20 insufficient to support a finding that any Defendant face a substantial likelihood of personal

21 liability for the purported conduct alleged in the Complaint and is insufficient to state a claim

22 against Defendants. Accordingly, each cause of action fails.

23     As discussed above, the first cause of action against current directors Cook, Drexler, Iger,

24 Jung and Levinson and former director Campbell for violation of section 14(a) is entirely

25 meritless. Plaintiff contends the 2012, 2013 and 2014 proxy statements were false and

26 misleading with respect to the election of the directors because they touted the directors' skills

27 and experience but purportedly failed to disclose that the directors had caused Apple to violate

28 antitrust laws, that the DOJ had previously investigated the purported violations, and that the

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1    directors' conduct could lead to criminal charges and civil liability against Apple.  Compl.

2    ¶¶ 100-101, 105-106, 110-111.  These allegations assume facts that the Complaint does not

3    sufficiently plead and that are untrue (that the directors participated in the challenged conduct)

4    and are in any event immaterial to the qualifications of the directors.  *See supra* § I.C;

5    *Zoumboulakis*, 2014 WL 3926565 at *11-*12.  Moreover, the claims with respect to Campbell

6    must be dismissed as moot, as Campbell has retired from the Board.  *See Gen. Elec.*, 980 F.2d at

7    934 (dismissing section 14(a) claim based on election of directors as moot where directors' terms

8    had lapsed).

9        The second, third and fourth causes of action for breach of fiduciary duty, gross

10   mismanagement and waste of corporate assets are alleged against all Defendants but fail to state a

11   claim against any.  Because Apple's exculpatory provision eliminates director liability for

12   anything short of intentional misconduct or bad faith, plaintiff faces an exceedingly high bar to

13   state a claim against Defendants.  Additionally, because each of these claims is expressly

14   premised on fraud (*see* Compl. ¶¶ 176, 180, 184), the claims must be pled with particularity.  *See*

15   Fed. R. Civ. P. 9(b).  Plaintiff fails to meet these high pleading standards and instead simply

16   infers that Defendants must have been involved in the purported conduct solely because they

17   served on Apple's Board.  *See, e.g.*, Compl. ¶¶ 39, 40 (alleging without any factual support that

18   Jung and Anderson "knowingly or recklessly approved Apple's anti-competitive 'no poaching'

19   policies despite knowledge that such agreements were unlawful and would subject Apple to

20   significant harm").  Indeed, the indiscriminate nature of the claims is highlighted by the inclusion

21   of Iger among the charged defendants.  Iger, however, did not join the Board until November

22   2011 (Compl. ¶ 36)—more than a year after the announcement of the DOJ settlement.  Iger had

23   no duties to Apple prior to November 2011 and therefore could not have breached any duties to

24   Apple relating to purported conduct that ended before November 2011.

25       The corporate waste claim fails for the same reasons.  Plaintiff contends all Defendants

26   caused Apple to waste corporate assets "by paying improper compensation and bonuses to certain

27   Directors who breached their fiduciary duties" and by causing Apple "to incur millions of dollars

28   of legal liability or legal costs to defend Defendants' unlawful actions."  Compl. ¶ 182.  The

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1    theory of corporate waste based on legal costs incurred fails at the outset because plaintiff has

2    failed to plead specific facts establishing each Defendant's involvement in the challenged

3    conduct.  Defendants cannot be liable for costs they did not cause.  The theory of corporate waste

4    based on the payment of salaries and standard fees to directors who purportedly breached their

5    fiduciary duties has been soundly rejected.  *See Taylor v. Kissner*, 893 F. Supp. 2d 659, 673 (D.

6    Del. 2012) (rejecting claim as "completely unprecedented").  Moreover, the standard for pleading

7    corporate waste is "severe" (*Glazer v. Zapata Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993)), and

8    plaintiff pleads no facts showing that the present situation is among the "unconscionable cases

9    where directors irrationally squander or give away corporate assets."  *Brehm*, 746 A.2d at 263.

10          To the extent the breach of fiduciary duty claims are attempting to assert *Caremark* claims

11   for an alleged failure of oversight (Compl. ¶ 135), such claims also fail.  Breach of fiduciary duty

12   for inadequate oversight that results in failure to prevent liability-creating activity is "possibly the

13   most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *In

14   re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996); *accord Guttman*,

15   823 A.2d at 506 (holding that "'only a sustained or systematic failure of the board to exercise

16   oversight . . . will establish the lack of good faith that is a necessary condition to liability'" on a

17   claim of inaction (citation omitted)).  A failure of oversight claim "requires a showing that the

18   directors knew that they were not discharging their fiduciary obligations."  *Stone v. Ritter*, 911

19   A.2d 362, 370 (Del. 2006).  Plaintiff must "plead the existence of facts suggesting that the board

20   knew that internal controls were inadequate, that the inadequacies could leave room for illegal or

21   materially harmful behavior, and that the board chose to do nothing about the control deficiencies

22   that it knew existed."  *Desimone*, 924 A.2d at 940.  The Complaint contains no such facts.  It

23   instead simply concludes that because liability-creating activity may have occurred, there must

24   have been a "systematic gross failure of oversight."  Compl. ¶ 135.  Such conclusory allegations

25   are not sufficient to hold Defendants liable for failing to prevent the alleged conduct.  *See

26   Saginaw Police & Fire Pension Fund v. Hewlett-Packard Co.*, No. 5:10–CV–4720 EJD, 2012

27   WL 967063, at *7 (N.D. Cal. Mar. 21, 2012) (dismissing claim where plaintiff failed to allege

28

1   particularized facts that the directors knew of the alleged violations and failed to take actions to

2   prevent or remedy the situation).

3          The fifth cause of action for breach of the duty of loyalty against Jobs, Cook and

4   Anderson also fails.  Jobs, Cook and Anderson allegedly caused Apple to enter into improper

5   agreements and benefited from the alleged wrongdoing because their compensation "was directly

6   tied to the company's financial performance, which was higher than it would have been but for

7   the wrongdoing since the wrongdoing help [sic] reduce Apple's compensation expenses."

8   Compl. ¶ 189.  A duty of loyalty claim requires a showing that a director or officer took actions

9   without a "good faith belief that her actions [were] in the corporation's best interest." *Guttman*,

10  823 A.2d at 506 n.34.  Plaintiff has not shown that here.  Plaintiff identifies no actions taken by

11  Anderson as an Apple officer.  Anderson is alleged to have "approved Apple's anti-competitive

12  'no poaching' policies" (Compl. ¶ 40), but the Complaint contains no facts to support that

13  contention.  The only factual allegations regarding Anderson are that he was Apple's Chief

14  Financial Officer from April 1996 to June 2004, an Apple director from June 2004 to October

15  2006, and a director of Palm beginning in October 2007.  *Id.* ¶¶ 40, 89.  As discussed above, there

16  are similarly no allegations supporting a finding that Cook had any awareness of the challenged

17  conduct.  *See supra* § I.B.4.  Lastly, the allegations do not support a finding that Jobs ever acted

18  without the good faith belief that his actions were in Apple's best interests.  Jobs never acted in a

19  manner adverse to Apple and never placed his interests above the Company's.  Accordingly, the

20  claims against all Defendants must be dismissed.

21  **III.     PLAINTIFF'S CLAIMS ARE TIME-BARRED.**

22          Causes of action two through five allege claims for breach of fiduciary duty or are

23  derivative of such claims.  *See* Compl. ¶¶ 170-91; *In re Citigroup Inc. S'holder Derivative Litig.*,

24  964 A.2d 106, 115 n.6 (Del. Ch. 2009) (noting that a claim for gross mismanagement is treated as

25  a claim for breach of fiduciary duty).  Plaintiff expressly states that he is alleging fraud.  *See*

26  Compl. ¶¶ 45 (alleging Defendants engaged in "illegal, fraudulent, and wrongful activities"), 176

27  (alleging Defendants' purported acts "were done maliciously, oppressively, and with intent to

28  defraud"), 180 (same), 184 (same).  Breach of fiduciary duty claims based on allegations of fraud

                                    - 18 -

1    are subject to the three-year statute of limitations for fraud claims.  *See, e.g*., *Am. Master Lease*
2    *LLC v. Idanta Partners, Ltd*., 225 Cal. App. 4th 1451, 1479 (2014).

3        Plaintiff contends Apple's highest-ranking executives entered into purported agreements
4    from 2004 until "at least 2010" (Compl. ¶ 50), though the last communication regarding Apple's
5    recruiting practices that the Complaint identifies occurred in July 2009.  *See id*. ¶¶ 64, 85, 90, 92.
6    At the latest, any alleged improper conduct ended by September 24, 2010, when the DOJ filed its
7    complaint and issued its press release.  *See id*. ¶ 96.  The statute of limitations for each of the
8    fiduciary duty claims (causes of action two through five) therefore ran by September 24, 2013 at
9    the latest—well before plaintiff filed this action on August 11, 2014.  Any argument based on a
10   tolling of the statute of limitations fails because the DOJ's complaint and press release put
11   reasonable shareholders on inquiry notice, if not actual notice, of their claims on September 24,
12   2010.  *See id*. (acknowledging DOJ announced settlement on its website on September 24, 2010).
13   The DOJ investigation and settlement were widely covered by the media.  *See* Lee Decl., Exs. L-
14   R (articles published by The New York Times, The Wall Street Journal, CNN, CNET, All Things
15   D and Bloomberg).  Moreover, because Apple is one of the most followed companies in the
16   world, its involvement in the DOJ settlement received particular attention, including on the
17   numerous websites dedicated to Apple news.  *See id*., Exs. S-U (forum discussions on
18   appleinsider.com and macrumors.com and article on macobserver.com).  The allegations in the
19   DOJ complaint form the basis of plaintiff's claims here.  *Compare, e.g*., Lee Decl., Ex. A at
20   ¶¶ 17-26 (alleging Apple's senior executives entered into improper agreements with Google,
21   Adobe and Pixar not to cold call each other's employees) *with* Compl. ¶¶ 59-85 (same).  A
22   reasonable Apple shareholder would have been on notice by September 24, 2010 of potential
23   claims.  The Second, Third, Fourth and Fifth Causes of Action are therefore untimely.

24       Claims based on violations of section 14(a) must be brought the earlier of one year from
25   inquiry notice of the violation or three years from the violation.  *See* 15 U.S.C. § 77m.  Because
26   the alleged omissions are based on information disclosed by the DOJ on September 24, 2010 (*see*
27   Compl. ¶¶ 99-113), which preceded the publication of the challenged proxy statements,
28   shareholders were on inquiry notice of the alleged proxy violations the moment the proxy

DEFS. MOT. TO DISMISS & MPA IN
SUPPORT THEREOF - 5:14-CV-03634-EJD

1   statements were published and had one year from the date of publication to file their claims.

2   Thus, any claims based on proxy statements published more than a year before plaintiff filed his

3   action (*i.e.*, before August 11, 2013) are untimely.

4                                **CONCLUSION**

5          A complaint based on unsupported speculation and inferences does not meet shareholders'

6   high pleading burden to establish demand futility.  Because the Complaint lacks sufficient

7   particularized factual allegations supporting a finding that a majority of Apple's Board is not

8   disinterested or independent, Defendants' motion to dismiss must be granted in its entirety

9   without leave to amend.  Defendants' motion to dismiss must also be granted because plaintiff's

10  claims are untimely and not sufficient to state a claim against any defendant.

11

12  Dated: January 9, 2015                        GEORGE A. RILEY (S.B. No. 118304)
                                                  MICHAEL F. TUBACH (S.B. No. 145955)
13                                                O'MELVENY & MYERS LLP

14

15                                                By: */s/ George A. Riley*
                                                      George A. Riley
16                                                Attorneys for Nominal Defendant APPLE
                                                  INC. and Defendants TIMOTHY D. COOK,
17                                                WILLIAM V. CAMPBELL, MILLARD
                                                  DREXLER, ARTHUR D. LEVINSON,
18                                                ROBERT A. IGER, ANDREA JUNG, FRED
                                                  D. ANDERSON and ESTATE OF STEVEN P.
19                                                JOBS

20

21

22

23

24

25

26

27

28

                                              DEFS. MOT. TO DISMISS & MPA IN
                                              SUPPORT THEREOF - 5:14-CV-03634-EJD