UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

R. ANDRE KLEIN,

               Plaintiff,

     v.

TIMOTHY D. COOK, et al.,

               Defendants.

Case No.   14-cv-03634-EJD

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: ECF No. 120

Plaintiff R. Andre Klein ("Plaintiff" or "Klein") filed this derivative shareholder action on August 11, 2014, alleging claims on behalf of nominal defendant Apple Inc. for violations of Section 14(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"); breach of fiduciary duty and aiding and abetting breach of fiduciary duty; gross mismanagement; waste of corporate assets; and breach of duty of honest services.  ECF No. 1 ("Compl.").  Plaintiff's claims are based on Apple's alleged entry into anti-poaching agreements with other companies— generally, though not exclusively, in the technology industry—in the mid and late 2000s. Presently before the Court is defendants Timothy D. Cook, Millard Drexler, Arthur D. Levinson, Robert A. Iger, Andrea Jung, Fred D. Anderson and the Estate of Steven P. Jobs and nominal defendant Apple Inc.'s ("Apple," and collectively, "Defendants")[1] Motion to Dismiss the Verified

---

[1] The Notice of Motion states that William V. Campbell, a named individual defendant, is also a movant.  *See* ECF No. 120, at 1.  The Court was informed on August 25, 2016 that Mr. Campbell had passed away earlier in 2016.  ECF No. 71.  Because no motion to substitute was made within 90 days after service of the notice, the Complaint is DISMISSED WITH PREJUDICE as to Mr. Campbell.  Fed. R. Civ. P. 25(a)(1).

United States District Court
Northern District of California

Shareholder Derivative Complaint.  ECF No. 120 ("Motion" or "Mot.").  The Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  Having reviewed the parties' submissions and the relevant law, the Court GRANTS Defendants' Motion with leave to amend for the reasons stated herein.

## I.      BACKGROUND

### A.      Factual Background

Plaintiff alleges that "[b]y at least early 2004 until at least 2010, Apple, through its highest ranking executives, entered into agreements with its competitors not to directly solicit each other's employees," in violation of federal antitrust laws.  Compl. ¶¶ 49, 50.  According to the Complaint, the late Steve Jobs was a, if not the, central figure of the anti-poaching conspiracy.  *See id.* ¶ 2. Jobs helped found Apple, was ousted from it in 1985, and then returned to the company in 1997. *Id.* ¶¶ 2, 22.  He served as Apple's CEO and director for most of its existence—except during the period of his ouster—until his death in October 2011.  *See id.* ¶ 41.  Jobs also served as the CEO of the company Pixar from 1986 until its acquisition by Disney in 2006.  *Id.* ¶¶ 36, 52.

According to Plaintiff, Jobs "did not like the active movement of employees because he did not want to lose good employees and have to pay new employees more money."  Compl. ¶ 49. Plaintiff alleges that by February 2004, Pixar and Apple had entered into an illegal agreement under which the companies would not cold call each other's employees.  *Id.* ¶ 50.  In February 2005, Jobs allegedly called Google's co-founder, Sergey Brin, to threaten that "if [Google] hire[d] a single one of [Apple's] people that means war."  *Id.* ¶ 68.  Plaintiff alleges that Apple had an illegal non-solicitation agreement with Google by early March 2005.  *Id.* ¶ 72.  By 2009, Apple allegedly had an official non-solicitation policy with respect to a group of companies on a "Hands Off (Do Not Call List)," including Microsoft, Garmin, Palm, Adobe, Best Buy, Foxconn, Genentech, Google, Intel, Intuit, J. Crew, Nike, Nvidia, Pixar, and Lucasfilm.  *Id.* ¶ 77 & Fig. 25.

In 2009, the U.S. Department of Justice ("DOJ") began investigating the hiring practices of some of the companies involved in the alleged conspiracy.  Compl. ¶ 96.  On September 24, 2010, the DOJ filed a complaint against Apple, Adobe, Google, Intel, Intuit, and Pixar.  *Id.*  The DOJ

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

alleged that these companies entered into private agreements about hiring, especially of high-tech employees, who were "deprived of competitively important information and access to better job opportunities," and that these agreements were "facially anticompetitive because they eliminated a significant form of competition to attract" employees.  *Id*.  A settlement was announced on the same day, and a final judgment in the action was entered in March 2011.  *Id.* ¶ 97.

Apple issued definitive proxy statements in 2012, 2013, and 2014 (respectively, the "2012 Proxy," "2013 Proxy," and "2014 Proxy," and collectively the "Proxy Statements" ).  Compl. ¶¶ 99, 104, 109.  The Proxy Statements solicited Apple shareholders' votes on various issues, including the re-election of Campbell and defendants Cook, Drexler, Iger, Jung, and Levinson to Apple's board of directors (the "Board").  *Id*.  Regarding the recommended re-election of the directors, the Proxy Statements discussed the directors' experience and qualifications, but did not disclose that the DOJ had been investigating Apple's potential violations of the antitrust laws or that Apple was potentially in danger of criminal charges and civil liability based on the anti-poaching practices.  *Id.* ¶¶ 100–01, 105–06, 110–11.  In each of the three years, Campbell, Cook, Drexler, Iger, Jung, and Levinson were re-elected to the Board.  *Id.* ¶¶ 102, 107, 112.

In addition to members of Apple's Board, the Complaint names Fred Anderson and the Estate of Steven P. Jobs (the "Estate") as individual defendants.  Anderson served on the Board from June 2004 to October 2006, and served as Apple's Executive Vice President and Chief Financial Officer from April 1996 to June 2004.  Compl. ¶ 40.  Plaintiff's claims against the Estate are limited to claims against the insurance companies that maintained the directors' and officers' liability policies that covered Steve Jobs during the periods when he "served as an executive officer and director of Apple."  *Id.* ¶ 41.

By August 2014, when Plaintiff filed the Complaint, there were eight individuals on Apple's Board:  defendants Timothy Cook, Millard Drexler, Robert Iger, Andrea Jung, and Arthur Levinson, and non-parties Al Gore, Ronald Sugar, and Susan Wagner.[2]  Compl. ¶ 147.  Plaintiff

---

[2] Mr. Campbell was the Board's chair from August 1998 until his resignation in July 2014, one month before Plaintiff filed the Complaint.  Compl. ¶ 23.

did not make a pre-suit demand on the Board.  *Id.* ¶ 145.  The Court notes the following pertinent

allegations as to the defendants serving on the Board when Plaintiff filed the Complaint.[3]

### 1.   Cook

Cook has held executive roles at Apple since 1998.  Compl. ¶ 20.  He became the COO in

2005 and remained in that position until August 2011, when he took over for Steve Jobs as

Apple's CEO.  *Id.*  Also in 2005, Cook joined the Apple Board as well as the board of directors of

Nike, Inc. ("Nike").  *Id.* ¶¶ 20–21.

### 2.   Drexler

Drexler joined Apple's Board in 1999.  *Id.* ¶ 27.  He was the CEO of The Gap, Inc.

("Gap") from 1995 until 2002, and in 2003 became the CEO of J.Crew and the chair of its board.

*Id.*  He remained in those positions at J.Crew through the filing of the Complaint.  *See id.*

### 3.   Jung

Plaintiff alleges that Jung has been a member of Apple's Board since January 2008, and

that she was Apple's "co-lead director" from 2009 to 2011.  Compl. ¶ 39.

### 4.   Iger

Iger joined Apple's Board in November 2011.  *Id.* ¶ 36.  Iger assumed the role of CEO at

The Walt Disney Company ("Disney") in 2005, and became the chair of its board in 2012; he kept

both roles through the filing of the Complaint.  *Id.*

### 5.   Levinson

Levinson became a member of Apple's Board in 2000, and he became its chair in

November 2011.  *Id.* ¶ 31.  According to Plaintiff, he was Genentech Inc.'s ("Genentech") CEO

from 1995 to 1999, and was the chair of Genentech's board of directors from 1999 through the

filing of the Complaint.  *Id.*

---

[3] It appears to the Court that some of the below allegations about the timelines of certain
defendants' service on various boards and in various positions at companies are inconsistent with
information in the public domain.  However, for the purposes of this Motion, the Court accepts as
true the allegations in the Complaint.

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
4

United States District Court
Northern District of California

### B.       Procedural Background

This case has been in stasis for a large portion of its existence due to the pendency of three related shareholder derivative actions that had been previously filed in California Superior Court, County of Santa Clara County and consolidated as *In re Apple, Inc. Derivative Litigation*, lead case no. 1-14-CV-262174 (the "State Consolidated Action").  *See* Exh. H (State Consolidated Action Complaint), ECF No. 120-3 at 90–163.[4]  Plaintiff filed the action in August 2014.  *See* Compl.  Defendants initially moved to dismiss the Complaint in this action in January 2015.  ECF No. 35.  In March 2015, Defendants moved to stay this action pending resolution of the State Consolidated Action.  *See* ECF No. 50.  Later that month, the Superior Court issued an order sustaining the state defendants' demurrer for failure to sufficiently plead demand futility and granting the plaintiffs 20 days to file an amended complaint.  *See* Exh. I ("2015 Demurrer Order"), ECF No. 120-3 at 164–170.  In May 2015, the Court granted Defendants' motion to stay and denied the motion to dismiss without prejudice to being re-filed.  ECF No. 59 ("Stay Order").  The Court required the parties to submit a joint status report regarding the status of the State Consolidated Action every three months, as well as a joint notice informing the Court within 10 days of either (1) a resolution of the State Consolidated Action through settlement or other informal means or (2) a final ruling on the demand futility issue.  Stay Order at 9.

As the State Consolidated Action unfolded, the Court thrice continued the stay—the first stipulated, the second requested by Defendants and opposed by Plaintiff, and the third requested by Plaintiff and opposed by Defendants.  *See* ECF Nos. 79–80, 91–92, 97–98.  On August 27, 2021, the California Court of Appeal affirmed the Superior Court's dismissal of the Third Amended Consolidated Complaint without leave to amend, again due to a failure to sufficiently plead demand futility.  *See* Exh. J ("2021 Appellate Order"), ECF No. 120-3 at 171–192.  On

---

[4] Unless otherwise noted, all exhibits refer to those attached to Defendants' Motion.  The Court grants Defendants' unopposed request to take judicial notice of pleadings and orders filed in the State Consolidated Action at both the trial and appellate levels, including Exhibits H–J, on the basis that they are public court records.  *See* Fed. R. Evid. 201; *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings).  Except as otherwise noted, *see infra*, at Section II.C.2 n.5, the Court DENIES AS MOOT Defendants' other requests for judicial notice.

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

5

1    December 31, 2021, the parties notified the Court of the 2021 Appellate Order.  ECF No. 110.

2    The Court subsequently lifted the stay, and Defendants filed the instant Motion in May 2022,

3    pursuant to the parties' stipulated briefing schedule.  *See* ECF No. 119.

## II.    DISCUSSION

5          Defendants move to dismiss the Complaint on four grounds: (1) orders adverse to the

6    plaintiffs in the State Consolidated Action preclude Plaintiff from litigating the issue of demand

7    futility in this action; (2) Plaintiff has not adequately pleaded demand futility; (3) Plaintiff has not

8    adequately pleaded continuous stock ownership; and (4) Plaintiff's federal and state claims are

9    time-barred.  The Court first addresses Defendants' statute of limitations arguments that would

10   confer or deny standing, before turning to the other arguments in turn.

### A.    Statute of Limitations

#### 1.    Section 14(a) Claims

##### a.    Legal Standard

14         Section 14(a) of the Exchange Act authorizes a claim for injury arising from the filing of a

15   fraudulent proxy statement.  15 U.S.C. § 78n(a).  The statute of limitations for claims brought

16   under Section 14(a) "is one year from the discovery of the occurrences giving rise to the claim, but

17   no later than three years from the date of the violation."  *Rudolph v. UTStarcom*, 560 F. Supp. 2d

18   880, 892 (N.D. Cal. 2008) (quoting *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173,

19   1212 (N.D. Cal. 2007)); *see also*, *e.g.*, *In re Columbia Pipeline, Inc.*, 405 F. Supp. 3d 494, 507

20   (S.D.N.Y. 2019) ("The statute of limitations on a section 14(a) claim begins to run 'one year after

21   discovery of the facts giving rise to the claim.'") (citation omitted); *Hastey ex rel. YRC*

22   *Worldwide, Inc. v. Welch*, 449 F. Supp. 3d 1053, 1062 ("The one-year limitations period functions

23   as a statute of limitations and the three-year limitations period functions as a statute of repose.")

24   (citation omitted).

##### b.    Analysis

26         Defendants argue that the DOJ's complaint and press release, published on September 24,

27   2010, put shareholders on inquiry notice, so that Plaintiff's Section 14(a) claims are time-barred as

28   Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    to the 2012 Proxy and the 2013 Proxy because they were published before August 11, 2013 (*i.e.*,

2    one year before Plaintiff filed this action).  Mot. at 23–24.  Plaintiff contends that the DOJ's 2010

3    actions did not constitute inquiry notice for his claims, noting that the claims are brought against

4    Apple's directors and neither the DOJ's complaint nor the press release referenced the directors.

5    Opp. at 23–24.

6           The Court is not persuaded by Plaintiff's argument that the press release or complaint

7    would have had to specifically reference Apple's directors in order to constitute inquiry notice for

8    his claims.  Inquiry notice is not actual notice; a press article may put a reasonable shareholder on

9    notice if there is "some reasonable nexus between the allegations made in the article and the nature

10   of the action subsequently brought."  *Berry v. Valence Tech., Inc.*, 175 F.3d 699, 705 (9th Cir.

11   1999) (citations omitted).  Plaintiff's Section 14(a) claims rest on the alleged omission from the

12   Proxy Statements "that the Individual Defendants caused Apple to engage in anti-poaching

13   practices, that the DOJ had been investigating Apple's potential violations of antitrust laws, and

14   that the Individual Defendants' conduct may lead to criminal charges and civil liability against and

15   cause substantial damages to Apple."  *Id.* ¶¶ 101, 106, 111.  The allegations in the DOJ's

16   September 2010 complaint and press release—which named Apple as one of the companies

17   alleged to have engaged in *per se* unlawful agreements restraining trade in the labor market for

18   high-tech employees and stated that the "agreements were formed and actively managed by senior

19   executives" of these companies, *id.* ¶¶ 4–6—not only have a "reasonable nexus" with Plaintiff's

20   Complaint but in fact explain the basis for it.  Plaintiff therefore had inquiry notice of the DOJ's

21   investigation into Apple's no-poach agreements, and of the fact that the DOJ alleged the

22   agreements were managed at the highest levels of the company.  Once Apple published its Proxy

23   Statements, Plaintiff had sufficient information to suggest further investigation.  *See Towers v.*

24   *Iger*, 2017 WL 6044035, at *10 (N.D. Cal. Mar. 10, 2017) (holding DOJ's press release regarding

25   no-poach agreements was sufficient to put Disney shareholders on inquiry notice about potential

26   wrongdoing by Disney board, despite press release not mentioning Disney or its board).

27          Because Plaintiff had inquiry notice of his Section 14(a) claims upon the issuance of each

28   Case No.: 14-cv-03634-EJD
     ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

7

1   of the Proxy Statements, he had one year from each issuance date to bring his claims. *Rudolph*,

2   560 F. Supp. 2d at 892 (citation omitted). The 2012 Proxy was filed on January 9, 2012; the 2013

3   Proxy was filed on January 7, 2013; the 2014 Proxy was filed on January 10, 2014; and the

4   Complaint was filed on August 11, 2014. Compl. ¶¶ 99, 104, 109. Accordingly, Plaintiff's

5   Section 14(a) claims based on the 2012 Proxy and the 2013 Proxy are time-barred because he had

6   inquiry notice more than one year before he filed the Complaint. The Section 14(a) claim based

7   on the 2014 Proxy is timely.

### 2.   State Law Claims

#### a.   Legal Standard

10   Plaintiff brings state law claims for breach of fiduciary duty, gross mismanagement, waste

11   of corporate assets, and breach of duty of honest services. Under California law, breach of

12   fiduciary duty claims that sound in fraud have a three-year statute of limitations, while claims

13   sounding in negligence have a four-year limitations period. *See Thomson v. Canyon*, 198 Cal.

14   App. 4th 594, 606 (2011); Cal. Code Civ. P. § 343; *Am. Master Lease LLC v. Idanta Partners,*

15   *Ltd.*, 225 Cal. App. 4th 1451, 1479 (2014). The parties agree that the limitations period applicable

16   to Plaintiff's breach of fiduciary claims is also applicable to the remainder of Plaintiff's common-

17   law claims. Mot. at 24; Opp. at 25.

#### b.   Analysis

19   Defendants argue that the three-year statute of limitations applies because Plaintiff's

20   breach of fiduciary duty claims sound in fraud, citing paragraphs of the Complaint in which

21   Plaintiff alleges fraudulent activity. *See, e.g.*, Mot. at 24 (citing Compl. ¶ 45 ("alleging

22   Defendants engaged in "illegal, fraudulent, and wrongful activities"), ¶ 176 (alleging Defendants

23   acted "maliciously, oppressively, and with intent to defraud"), ¶ 180 (stating that Defendants'

24   alleged actions were "done maliciously, oppressively, and with intent to defraud")). Plaintiff

25   counters that Defendants "cherry-picked isolated references" to fraudulent activities, and that "the

26   gravamen of Plaintiff's claims sounds in negligence," so that the four-year limitations period

27   applies. Opp. at 25.

28   Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

The Complaint contains 195 paragraphs of allegations.  Three of these paragraphs allege action by Defendants with an intent to defraud, and one alleges that Defendants engaged in fraudulent activity.  Compl. ¶¶ 45, 176, 180, 184.  The crux of the Complaint is based on Defendants' alleged failure to (1) prevent Apple from engaging in no-poach agreements and (2) inform shareholders of the no-poach agreements and DOJ investigation of the Proxy Statements. Drawing the inferences in Plaintiff's favor, the Court holds that the gravamen of Plaintiff's claims sounds in negligence, and that Plaintiff had four years from September 24, 2010—the date of the publication of the DOJ complaint and press release—to bring his common law claims.  Because the Complaint was filed on August 11, 2014, the common law claims are timely to the extent they sound in negligence.

Based on the foregoing, the Court GRANTS Defendants' motion to dismiss the Section 14(a) claims based on the 2012 Proxy and the 2013 Proxy as time-barred, but otherwise rejects Defendants' statute of limitation arguments.

### B.     Issue Preclusion

Under the United States Constitution, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."  U.S. Const. art. IV, § 1. "As implemented under 28 U.S.C. § 1738, federal courts must 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'"  *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1130 (9th Cir. 2019) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).  Defendants argue that the 2015 Demurrer Order and the 2021 Appellate Order preclude Plaintiff from arguing that demand was futile.  Mot. at 7–15.  Plaintiff contends that Defendants are unable to satisfy their burden of establishing issue preclusion under California law.  Opp. at 7–14.

#### 1.     Legal Standard

Because Defendants assert that California state court decisions preclude Plaintiff from arguing demand futility in this action, California law applies.  *Rodriguez*, 930 F.3d at 1130.  In *Lucido v. Superior Court*, the California Supreme Court set forth the showing required for a party

to successfully assert issue preclusion:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. [Fifth], the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

51 Cal. 3d 335, 341 (1990).  If these five "threshold requirements" are met, the evaluating court should "look[] to the public policies underlying the doctrine"—*i.e.*, "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation"—to determine whether issue preclusion would be "fair to the parties and constitute sound judicial policy." *Id.* at 342–43.

### 2.    Analysis

The Court finds that neither the 2015 Demurrer Order nor the 2021 Appellate Order meet the threshold requirements outlined in *Lucido*.  The 2015 Demurrer Order sustained the state court defendants' initial demurrer to the plaintiffs' consolidated complaint, and granted leave to amend. Exh. I, ECF No. 120-3 at 169.  It therefore does not meet the finality requirement of the fourth *Lucido* factor.  Defendants argue (correctly) that California law does not require a final judgment to be rendered for issue preclusion to apply, and that a "sufficiently firm" adjudication of an issue may be accorded conclusive effect. Mot. at 12 (quoting *Meridian Fin Servs, Inc. v. Phan*, 67 Cal. App. 5th 657, 688 (2021)).  Defendants then creatively contend that because the state court plaintiffs could have refrained from amending the consolidated complaint and then appealed the resulting judgment, their choice to instead amend the complaint was a "voluntary decision to forego judicial review [and thus] not a circumstance that defeats issue preclusion."  ECF No. 123 ("Reply") at 6–7 (quoting *Meridian*, 67 Cal. App. 5th at 693).  But the order in *Meridian* that the court found "sufficiently firm" was a "Statement of Decision and Judgment" that was vacated in part pursuant to the parties' settlement.  *Meridian*, 67 Cal. App. 5th at 673, 691.  The 2015 Demurrer Order does not come close to the level of "sufficient[] firm[ness]" of the order at issue in *Meridian*.  Instead, it falls into a clear bucket of orders that California law provides is not

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
10

1   grounds for issue preclusion. *See Kruss v. Booth*, 185 Cal. App. 4th 699, 712 (2010) ("[O]rders

2   sustaining demurrers with leave [to amend] are not *res judicata*, collateral estoppel, law of the

3   case, or any other claim- or issue-precluding disposition.").

4         The 2021 Appellate Order affirming the trial court's dismissal without leave to amend and

5   entry of judgment is, by contrast, undisputedly final. *See* Opp. at 12 (omitting 2021 Appellate

6   Order from discussion of finality).  Nonetheless, the order does not have preclusive effect because

7   the demand futility issue adjudicated in the 2021 Appellate Order is not identical to the demand

8   futility issue here. *See Lucido*, 51 Cal. 3d 341 ("First, the issue sought to be precluded from

9   relitigation must be identical to that decided in a former proceeding.").  The 2021 Appellate Order

10  evaluated demand futility with respect to the Apple Board existing when the state court plaintiffs

11  filed their Third Amended Consolidated Complaint in March 2018. *See* Exh. J, ECF No. 120-3 at

12  177.  The California Court of Appeal "assume[d] that the TAC's allegations were adequate as to

13  Cook, Levinson, and Iger[] . . . [and] therefore limit[ed] [its] analysis to the TAC's allegations as

14  to Gore and Jung." *Id.* at 179.  The court did not consider the TAC's allegations as to Wagner

15  because the plaintiffs did not challenge the trial court's determination that those allegations were

16  inadequate. *Id.* at 179 n.4.  Further, "[t]he TAC made no allegations concerning Sugar or Bell, the

17  two remaining members of the 2018 Board." *Id.* at 179 n.6.  The 2021 Appellate Order reasoned

18  that the plaintiffs had not shown that demand was futile as to Gore and Jung, so that plaintiffs

19  could at best allege demand futility to three of the eight members of the March 2018 Board. *See*

20  *id.* at 14–18.

21        The Apple Board in place when Plaintiff filed his Complaint in August 2014 consisted of

22  Cook, Drexler, Gore, Iger, Jung, Levinson, Sugar, and Wagner.  Compl. ¶ 124.  Although Cook,

23  Gore, Iger, Jung, Levinson, Sugar, and Wagner remained on the Board by the time the state court

24  plaintiffs filed their Third Amended Consolidated Complaint in March 2018, Drexler had been

25  replaced by James Bell. *See* Exh. J, ECF No. 120-3 at 177.  Even if the Court were to adopt the

26  2021 Appellate Order's reasoning with respect to the futility of demand on the seven overlapping

27  Board members, Plaintiff here could still potentially show demand futility with respect to four of

28  Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

the eight Board members serving when he filed his Complaint—Iger, Levinson, Cook, and Drexler—and thereby meet the threshold to bypass a litigation demand.  The issues are therefore not identical, and the 2021 Appellate Order cannot have a preclusive effect on Plaintiff's ability to assert demand futility.  *See Lucido*, 51 Cal. 3d 341.  Defendants argue that Plaintiff "should not be permitted to assert demand futility as to an earlier board when [his] fellow shareholders triggered a demand requirement with a later board."  Mot. at 8.  This argument might have more persuasive weight had Defendants not requested—over Plaintiff's objection—that the Court continue the stay of this action until after the state trial court "rule[d] on any demurrer challenging the Third Amended Consolidated [] Complaint."  ECF No. 91 at 3.  For this reason, the proper consideration of demand futility with respect to the Board in place when Plaintiff filed the Complaint in August 2014—nearly four years before the state plaintiffs filed their March 2018 TAC—does not implicate an "indefinite[] relitigat[ion] [of] the demand futility question in an unlimited number of state and federal courts."  *Cf. Henik ex rel. LaBranche & Co. v. LaBranche*, 433 F. Supp. 2d 372, 380 (S.D.N.Y. 2006).

Given its conclusions that the 2015 Demurrer Order is not "final" and the 2021 Appellate Order does not analyze an "identical" issue to the one presented here, the Court need not address the other *Lucido* factors or the public policy implications of applying issue preclusion here. Accordingly, the Court finds that the events of the State Consolidated Action do not preclude Plaintiff from asserting demand futility with respect to the Complaint in this action.

### C.    Demand Futility

Defendants argue that Plaintiff has failed to plead demand futility with respect to the Board in place when he filed the Complaint in August 2014.  Mot. at 15–22.  Plaintiff counters that the Complaint alleges facts that "cast a reasonable doubt that Cook, Drexler, Levinson, Iger, and Jung could consider a demand in an independent and disinterested manner because they all face a substantial likelihood of liability for participating in or recklessly ignoring the red flags of Apple's anti-poaching practices."  Opp. at 14; *see id.* at 14–18.  The claims brought against Cook, Drexler, Iger, Jung, and Levinson (together, the "Demand Defendants") are violations of Section 14(a) of the

1   Exchange Act based on alleged omissions from the Proxy Statements regarding Apple's involvement

2   in anti-poaching agreements and the DOJ's related investigation; breach of fiduciary duty and aiding

3   and abetting such breaches; gross mismanagement; waste of corporate assets; and—as to Cook—

4   breach of the duty of honest services.  Compl. ¶¶ 164–191.

### 1.   Legal Standard

6   The parties agree that California law applies.  *See* Compl. ¶ 146; Mot. at 16; Opp. at 14.

7   "California's demand requirement under [Cal. Corp. Code §] 800(b)(2) is similar to the federal

8   rule and requires that the plaintiff in a shareholder derivative suit 'allege[ ] in the complaint with

9   particularity plaintiff's efforts to secure from the board such action as plaintiff desires, or the

10  reasons for not making such effort.'"  *Bader v. Anderson*, 179 Cal. App. 4th 775, 790 (2009).

11  "[D]emand typically is deemed futile when a majority of the directors have participated in or

12  approved the alleged wrongdoing, [] or are otherwise financially interested in the challenged

13  transactions."  *Id.*  Although Delaware law does not control this inquiry, California courts have

14  repeatedly looked to Delaware decisions when evaluating demand futility.  *See id.* at 791 n.5

15  ("[S]ince Delaware corporate law is not inconsistent with California law relevant here, we find

16  instructive certain cases decided in Delaware described in this opinion on the subjects of

17  shareholder derivative suits and demand futility."); *Oakland Raiders v. Nat'l Football League*, 93

18  Cal. App. 4th 572, 586 n.5 (2001) ("The parties agree that we may properly rely on corporate law

19  [regarding demand futility] developed in the state of Delaware given that it is identical to

20  California corporate law for all practical purposes.").

21  A shareholder must either make a pre-suit demand on the board of directors of the nominal

22  defendant, or allege particularized facts sufficient to raise a "reasonable doubt that a majority of

23  the Board would be disinterested or independent in making a decision on a demand."  *Rales v.*

24  *Blasband*, 634 A.2d 927, 930 (Del. 1993).  In an even-numbered board, a plaintiff must show that

25  at least half of the board was interested or not independent.  *In re Goldman Sachs Grp., Inc.*

26  *S'holder Litig.*, 2011 WL 4826104, at *7 n.75 (Del. Ch. Oct. 12, 2011) (internal quotations and

27  citation omitted); *Leyte-Vidal v. Semel*, 220 Cal. App. 4th 1001, 1007 (2013) (noting plaintiff was

28  Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

required to "allege facts specifically directed at demand futility with respect to at least half of the directors"). "[T]he court must be apprised of facts specific to each director from which it can conclude that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff." *Bader*, 179 Cal. App. 4th at 790 (quotation marks and citation omitted).

When evaluating demand futility, the Delaware Supreme Court has held that a court must ask three questions on an individualized, director-by-director basis:

1. whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand;
2. whether the director faces a substantial likelihood of liability on any of the claims that would be the subject of the litigation demand; and
3. whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that would be the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.

*United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg* ("*Zuckerberg*"), 262 A.3d 1034, 1059 (Del. 2021). "If the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." *Id.*

### 2.    Analysis

The Court must evaluate whether demand was futile with respect to the eight-member board existing when Plaintiff filed the Complaint, *i.e.*, the five Demand Defendants and non-parties Gore, Sugar, and Wagner. *Braddock*, 906 A.2d at 786; Compl. ¶ 147. To hold that demand was excused as futile, the Court must find that the Complaint alleges particularized facts raising a reasonable doubt that at least four of the eight board members "would be disinterested or independent in making a decision on a demand." *Rales*, 634 A.2d at 930; *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *7 n.75.

The Complaint does not allege that demand was futile as to non-parties Gore, Sugar, or Wagner. *See* Compl. ¶¶ 145–155. Accordingly, demand is only excused if Plaintiff has sufficiently alleged that demand would have been futile as to at least four of the five Demand

United States District Court
Northern District of California

1    Defendants—Cook, Drexler, Iger, Jung, and Levinson.  Plaintiff argues that demand was futile as

2    to the Demand Defendants because each faces a substantial likelihood of liability based on the

3    claims brought against them, *i.e.*, each Demand Defendant is interested in the action under the

4    second prong of the *Zuckerberg* test.  Opp. at 14.  Defendants argue that there is not a substantial

5    likelihood of liability on any claim because Apple's Articles of Incorporation include an

6    exculpatory clause barring director liability to the fullest extent permissible under California law.

7    *See* Exh. K (Restated Articles of Incorporation of Apple Inc.), art. IV, Sect. 1, ECF No. 120-3 at

8    193–198.[5]  Although Plaintiff contends that this argument is an affirmative defense that the Court

9    should refuse to consider at the pleading stage, "the assertion of an affirmative defense may be

10   considered properly on a motion to dismiss where the 'allegations in the complaint suffice to

11   establish' the defense."  *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (quoting *Jones*

12   *v. Bock*, 549 U.S. 199, 215 (2007)).

13          Under California law, a corporation's articles of incorporation may "eliminat[e] or limit[]

14   the personal liability of a director for monetary damages in an action brought by or in the right of

15   the corporation for breach of a director's duties to the corporation and its shareholders."  Cal.

16   Corp. Code § 204(a)(10).  Directors may not be exculpated for acts or omissions involving

17   intentional misconduct, bad faith, "reckless disregard for the director's duty to the corporation or

18   its shareholders in circumstances in which the director was aware, or should have been aware, in

19   the ordinary course of performing a director's duties, of a risk of serious injury to the corporation

20   or its shareholders," or "an unexcused pattern of inattention that amounts to an abdication of the

21   director's duty to the corporation or its shareholders."  *Id.*

22          "When the certificate of incorporation exempts directors from liability, the risk of liability

23   does not disable them from considering a demand fairly unless particularized pleading permits the

24   court to conclude that there is a substantial likelihood that their conduct falls outside the

_____

[5] The Court grants Defendants' unopposed request to take judicial notice of Exhibit K on the basis
that the Restates Articles of Incorporation are public records.  *See* Fed. R. Evid. 201; *L'Garde,
Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 937-938 (C.D. Cal. 2011) (taking
judicial notice of results of records searches from the California Secretary of State website).

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
15

*United States District Court*
*Northern District of California*

exemption." *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995).  The Court must therefore consider for each Demand Defendant whether Plaintiff has alleged facts with sufficient particularity to create a substantial likelihood of liability in light of the exculpatory provision in Apple's Articles of Incorporation.[6]

### a.   Defendant Cook

The Court finds that Plaintiff has alleged particularized facts sufficient to show demand was futile as to Cook.  The Complaint alleges that the DOJ issued a press release stating that the no-poach agreements "were formed and actively managed by senior executives of" the charged companies, including Apple.  Compl. ¶¶ 5–6.  Additional allegations state that Cook held executive roles at Apple since 1998, including the COO position from 2005 to August 2011.  *Id.* ¶ 20.  Drawing all reasonable inferences in Plaintiff's favor, the above two points reasonably suggest that Cook was one of the "senior executives" at Apple who was actively involved with the no-poach agreements.  *See Rosenbloom v. Pyott*, 765 F.3d 1137, 1141 (9th Cir. 2014) ("Plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged.") (quoting *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000)).

Further, the Complaint alleges that Cook was concurrently a member of both Nike's and Apple's boards, and that Nike appeared on one of Apple's internal no-solicitation lists.  Compl. ¶¶ 20–21, 64 & Fig. 14.  The Complaint additionally alleges that when Steve Jobs learned that Adobe had solicited an Apple employee, he emailed Adobe's CEO, stating, "I have a standing policy with our recruiters that we don't recruit from Adobe.  It seems you have a different policy.  One of us must change our policy. Please let me know who."  *Id.* ¶ 78 & Fig. 27.  The reasonable inference to be drawn in Plaintiff's favor from these particularized allegations is that Apple did not hold one-sided no-solicitation agreements, and that Nike's appearance on Apple's no-solicitation list

---

[6] The Court notes that Plaintiff's common law claims, which he argues are based in negligence, *see supra*, at Section II.A.2.b., would appear to be exculpated by the Articles of Incorporation.  To the extent they are in fact based in fraud, it appears that they would be barred by the three-year statute of limitations discussed above.  As the parties did not argue this issue, the Court will not issue a ruling on this point.

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
16

United States District Court
Northern District of California

1    meant that Apple and Nike had a bilateral no-poach agreement.  Additionally, a parenthetical next

2    to Nike's name on the no-solicitation list stated: "(Common board members)."  *Id.* ¶¶ 21, 64 at

3    Fig. 14.  This allegation reasonably suggests that the "common board members" were related to

4    Nike's appearance on Apple's no-solicitation list, and it would not be reasonable to assume that

5    these common board members would be unaware of their influence in this regard.  As a common

6    board member for Apple and Nike, and a senior executive at Apple, it is reasonable to infer that

7    Cook was involved in and aware of Apple's no-solicitation agreements.

8           Accordingly, the Court finds that Plaintiff has alleged that demand was futile as to Cook.

9                            **b.      Defendant Drexler**

10          The Court similarly finds Plaintiff's allegations sufficient to show demand futility as to

11   Drexler.  Plaintiff alleges that Drexler joined Apple's Board in 1999 and became the CEO of

12   J.Crew and chair of its board in 2003.  Compl. ¶ 27.  J.Crew, like Nike, appeared on Apple's

13   internal no-solicitation list with the "common board members" notation.  *Id.* ¶ 64 at Fig. 14.  The

14   Complaint also includes several particularized allegations showing communications in which

15   Steve Jobs emailed the CEOs of companies in order to cajole or threaten them into no-poach

16   agreements.  *See, e.g.*, *id.* ¶¶ 67 & Fig. 15, 68 & Fig. 16, 70 & Fig. 17, 78–81 & Figs. 26–30, 86–

17   89 & Figs. 38–41.  Therefore, in addition to the reasonable inference that Apple did not have one-

18   sided no-poach policies, *see supra*, at II.B.2.a., the allegations in the Complaint also lead to the

19   reasonable inference that the no-solicitation agreements were reached at the CEO level of the

20   respective companies.  At this pleading stage, Plaintiff's allegations that Drexler was J.Crew's

21   CEO, J.Crew appeared on Apple's no-solicitation list, and Steve Jobs entered Apple into bilateral

22   no-solicitation policies by communicating with the CEO of the other company all combine to

23   create a reasonable inference that Drexler, as J.Crew's CEO, communicated with Steve Jobs about

24   Apple's no-solicitation agreements.  This inference of Drexler's knowledge of Apple's practices is

25   sufficient at this stage to find that demand was futile as to Drexler.

26                            **c.      Defendant Iger**

27          The allegations with respect to Iger, however, are not sufficient to draw a reasonable

28   Case No.: 14-cv-03634-EJD
     ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    inference that demand was futile.  Unlike Cook or Drexler, Iger was not an executive or board

2    member of a company on Apple's no-solicitation list.  According to the Complaint, Iger assumed

3    the role of CEO at Disney in 2005, and became the chair of its board in 2012.  Compl. ¶ 36.  He

4    joined Apple's Board in November 2011.  *Id.*  Disney did not appear on Apple's internal no-

5    solicitation list.  *See, e.g.*, *id.* ¶ 64 at Fig. 14.  The Complaint alleges that Disney acquired Pixar in

6    2006 and that Pixar and Apple had a no-solicitation agreement.  *Id.* ¶ 154.  The Complaint further

7    allege that "it is reasonable to assume that as CEO [of Disney] he was aware of the restrictive

8    agreement with Pixar and Apple when Pixar was acquired."  *Id.*  However, the Complaint also

9    alleges that the agreement between Pixar and Apple was formed while Jobs was the CEO of Pixar

10   (and Apple), *id.* ¶¶ 52–53, 59, and includes no allegations as to Pixar's leadership structure and

11   relationship to Disney following Disney's acquisition of Pixar.  Therefore, Plaintiff includes no

12   particularized allegations that permit a reasonable inference that Iger would have been aware of

13   the agreement between Pixar and Apple, so that the Court cannot infer that Iger faced a substantial

14   likelihood of liability based on Apple's no-poaching agreements.

15          The Complaint also alleges that Iger's "close relationship with Jobs ma[de] him incapable

16   of taking action against Jobs," and that "[a]ny suit by Apple to recover for the wrongdoings listed

17   [in the Complaint] would expose Iger to personal liability for the illegal agreements he ratified

18   while at Disney."  Compl. ¶ 154.  Allegations that directors are "close" friends, without more, are

19   insufficient to rebut the presumption that a director is able to exercise his or her independent

20   judgment in evaluating a shareholder litigation demand.  *See, e.g.*, *In re CBS Corp. S'holder Class*

21   *Action & Derivative Litig.*, 2021 WL 268779, at *30 & n.352 (Del. Ch. Jan. 27, 2021) (allegations

22   that director was "close friend" of interested director and served on same non-profit board

23   revealed "both personal and professional relationships" but did not show lack of independence);

24   *cf. Marchand v. Barnhill*, 212 A.3d 805, 818–19 (Del. 2019) (finding director not independent

25   from interested director due to "very warm and thick personal ties of respect, loyalty, and

26   affection" between directors where interested director's family provided nearly three decades of

27   mentorship and opportunities to dependent director and spearheaded donation effort leading to

28   Case No.: 14-cv-03634-EJD
     ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1    dependent director having a college facility named after him).  And Plaintiff does not allege any

2    facts to support the statement that Iger "ratified" illegal agreements while at Disney.  Accordingly,

3    the Court concludes that Plaintiff has not sufficiently pleaded particularized facts showing that

4    demand would have been futile as to Iger.

5                        **d.    Defendant Jung**

6           The allegations as to Jung are even less sufficient.  The Complaint includes no

7    particularized allegations as to Jung except that "Defendant Andrea Jung ('Jung') is a Director of

8    Apple and has been a director since January 2008.  Jung was Apple's co-lead director from 2009

9    to 2011."  Compl. ¶ 39.  The few other allegations specific to Jung are conclusory.  *See id.* ("Jung

10   knowingly or recklessly approved Apple's anti-competitive 'no poaching' policies, despite

11   knowledge that such agreements were unlawful and would subject Apple to significant harm.");

12   *id*. ¶ 155 ("During Jung's tenure as a director, Jung and other Individual Defendants caused Apple

13   to engage in practices that violated antitrust laws by agreeing to refrain from hiring employees of

14   Apple's competing companies.  In fact, the DOJ began investigating Apple's hiring practices in

15   2009.  Thus, Jung was aware of Apple's antitrust violations.").  "[C]onclusory allegations are not

16   considered as expressly pleaded facts or factual inferences."  *Rosenbloom*, 765 F.3d at 1148

17   (citation omitted).  Plaintiffs have provided no facts suggesting that Jung knew of the anti-

18   poaching agreements or otherwise faced any substantial likelihood of liability such that demand

19   would have been futile.

20                       **e.    Defendant Levinson**

21          Lastly, the Court finds Plaintiff's allegations sufficient to demonstrate demand futility as to

22   Levinson.  The Complaint alleges that Levinson became a member of Apple's Board in 2000, and

23   its chair in November 2011.  Compl. ¶ 31.  Additionally, Plaintiff alleges Levinson was

24   Genentech's CEO from 1995 to 1999, and the chair of Genentech's board of directors from 1999

25   through the filing of the Complaint.  *Id.*  Genentech was included on Apple's internal no-

26   solicitation list with the notation "CEO sits on our board."  *Id.* ¶ 64, at Fig. 14.  As with Drexler,

27   the Court can reasonably infer from Plaintiff's allegations that Genentech and Apple had a

28   Case No.: 14-cv-03634-EJD
     **ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

     United States District Court
     Northern District of California

bilateral no-solicitation agreement, that Steve Jobs communicated the agreement to Levinson, and that the agreement came about in part because of Levinson's role as Genentech CEO and Apple board member.  The allegations as to Levinson are therefore sufficient to support the inference that Levinson was aware of and participated in the no-poach agreements, and therefore could not independently review a litigation demand.

Based on the foregoing analysis, the Court finds that Plaintiff has sufficiently pleaded demand futility only as to Cook, Drexler, and Levinson.  Plaintiff has therefore not met his pre-suit demand requirement.  *See* Cal. Corp. Code § 800(b)(2); *Bader*, 179 Cal. App. 4th at 798–90.

## III.     CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Defendants' motion to dismiss as time-barred Plaintiff's Section 14(a) claims based on the 2012 Proxy and 2013 Proxy is GRANTED;

2. Defendants' motion to dismiss as time-barred Plaintiff's common law claims is DENIED;

3. Defendants' motion to dismiss the Complaint based on the preclusion of the demand futility issue by orders in the State Consolidated Action is DENIED; and

4. Defendants' motion to dismiss the Complaint based on an inadequate showing of demand futility is GRANTED.

5. Plaintiff may amend the Complaint if he can allege particularized facts showing the futility of demand as to the operative board of directors.  If Plaintiff amends the Complaint, he must remove the Section 14(a) claims based on the 2012 Proxy and the 2013 Proxy.  The Court further instructs Plaintiff to consider the viability of his common law claims based on their sounding in negligence or fraud in light of the applicable statute of limitations and Apple's Articles of Incorporation.  Lastly, any amended complaint should include particularized allegations about his continuous stock ownership.

6. The amended complaint must be filed within two weeks of the entry of this order.

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
20

United States District Court
Northern District of California

1          **IT IS SO ORDERED.**

2     Dated: May 30, 2023

3

4                                                    _____

5                                                    EDWARD J. DAVILA
                                                     United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    Case No.: 14-cv-03634-EJD
      ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND