1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6                                SAN JOSE DIVISION

7

8    R. ANDRE KLEIN, on behalf of himself          Case No.   14-cv-03634-EJD
     and all other stockholders of APPLE INC.
9                                                  **ORDER GRANTING MOTION TO**
                       Plaintiff,                  **DISMISS FIRST AMENDED**
10                                                 **COMPLAINT WITHOUT LEAVE TO**
                v.                                 **AMEND**
11
     TIMOTHY D. COOK, et al.,
12                                                 Re: ECF No. 131
                       Defendants, and
13

14   APPLE INC., a California corporation,

15                     Nominal Defendant.

16

17          Plaintiff R. Andre Klein ("Plaintiff") filed a First Amended Verified Shareholder

18   Derivative Complaint (the "FAC") in this derivative shareholder action on June 27, 2023.  *See*

19   FAC, ECF No. 129.  Mr. Klein brings his suit on behalf of nominal defendant Apple Inc.

20   ("Apple") against defendants Timothy D. Cook, Millard ("Mickey") Drexler, Arthur D. Levinson,

21   Robert A. Iger, Andrew Jung, Fred D. Anderson, and the Estate of Steven P. Jobs, deceased

22   (collectively, "Defendants").  Cook, Levinson, and Jung and current members of Apple's board of

23   directors (the "Board"), and Drexler, Iger, and Anderson are former Board members.[1]  The FAC

24   alleges five claims:  (1) violations of § 14(a) of the Securities and Exchange Act of 1934 (the

25   _____

26   [1] The FAC also names former Board member William V. Campbell as a defendant and includes
     substantive allegations as to his conduct.  *See, e.g.*, FAC ¶¶ 24–27.  However, the Court dismissed
27   this action with prejudice as to Mr. Campbell in its May 30, 2023 order granting Defendants'
     motion to dismiss Plaintiff's original complaint.  *See* ECF No. 125, at 1 n.1.
28   Case No.: 14-cv-03634-EJD
     ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.
                                                1

"Exchange Act"), *see* FAC ¶¶ 168–73; (2) breach of fiduciary duty and aiding and abetting the same, *see id.* ¶¶ 174–80; (3) gross mismanagement, *see id.* ¶¶ 181–84; (4) waste of corporate assets, *see id.* ¶¶ 185–188; and (5) breach of duty of honest services, *see id.* ¶¶ 189–195.  Now pending before the Court is Defendants' motion to dismiss the FAC (the "Motion").  *See* Mot., ECF No. 131.  The Motion was fully briefed on September 22, 2023.  *See* Opp'n, ECF No. 132; Reply, ECF No. 134.  The Court found the matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  *See* ECF No. 135.  Having reviewed the parties' submissions and the relevant law, the Court GRANTS Defendants' Motion WITHOUT LEAVE TO AMEND.

## I.   BACKGROUND

The following discussion of the factual allegations in and procedural history of this action is drawn in large part from the Court's order issued on May 20, 2023 (the "May 2023 Order") assessing Defendants' motion to dismiss Plaintiff's original complaint.  *See* May 2023 Order 2–6, ECF No. 125.

### A.   Factual Allegations

#### 1.   Parties

Plaintiff brings this action derivatively on behalf of Apple.  FAC ¶ 19.  He first acquired Apple stock on January 15, 2009, and has continuously held Apple stock since that time.  *See id.*

Nominal defendant Apple is a publicly traded California corporation headquartered in Cupertino, California.  *See id.* ¶ 20.

Defendants Cook, Levinson, and Jung are current members of Apple's Board.  *See id.* ¶ 118.  Defendants Drexler, Iger, and Anderson are former members of the Board.  *See id.* ¶¶ 28, 37, 41.  Defendant Estate of Steven P. Jobs, deceased (the "Estate") is the estate of the late Steve Jobs, Apple's co-founder, former CEO, and former director.  *See* FAC ¶ 42.  Plaintiff's claims against the Estate "are brought only against the insurance companies that maintained the applicable directors' and officers' liability policies that covered Jobs during the applicable time he served as an executive officer and director of Apple," and Plaintiff does not seek any recovery from the Estate beyond the limits of the insurance policies.  *Id.*

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.
2

### 2.      Alleged Non-Solicitation Agreements

Plaintiff alleges that "[b]y at least early 2004 until at least 2010, Apple, through its highest ranking executives, entered into agreements with its competitors not to directly solicit each other's employees," in violation of federal antitrust laws. FAC ¶ 51. According to the FAC, Steve Jobs was a—if not the—central figure of the anti-poaching conspiracy. *See id.* ¶ 2. Jobs served as the CEO and a director of Apple for most of its existence—with a notable exception from his ouster in 1985 to his return in 1997—until his death in October 2011. *See id.* ¶¶ 23, 42. Jobs also served as the CEO of the company Pixar from 1986 until its acquisition by Disney in 2006. *Id.* ¶¶ 37, 53.

According to Plaintiff, "Jobs did not like the active movement of employees because he did not want to lose good employees and have to pay new employees more money." FAC ¶ 50. Plaintiff alleges that by February 2004, Pixar and Apple had entered into an illegal agreement under which the companies would not cold call each other's employees. *Id.* ¶ 60. In February 2005, Jobs allegedly called Google's co-founder, Sergey Brin, to threaten that "if [Google] hire[d] a single one of [Apple's] people that means war." *Id.* ¶ 69. Plaintiff alleges that Apple had an illegal non-solicitation agreement with Google by early March 2005. *Id.* ¶ 73. By 2009, Apple allegedly had an official non-solicitation policy with respect to a group of companies on a "Hands Off (Do Not Call List)," including Microsoft, Garmin, Palm, Adobe, Best Buy, Foxconn, Genentech, Google, Intel, Intuit, J. Crew, Nike, Nvidia, Pixar, and Lucasfilm. *Id.* ¶ 78 & Fig. 25.

In 2009, the U.S. Department of Justice ("DOJ") began investigating the hiring practices of some of the companies involved in the alleged conspiracy. FAC ¶ 97. On September 24, 2010, the DOJ filed a complaint against Apple, Adobe, Google, Intel, Intuit, and Pixar. *Id.* The DOJ alleged that these companies entered into private agreements about hiring, especially of high-tech employees, who were "deprived of competitively important information and access to better job opportunities," and that these agreements were "facially anticompetitive because they eliminated a significant form of competition to attract" employees. *Id.* A settlement was announced on the same day, and a final judgment in the action was entered in March 2011. *Id.*

United States District Court
Northern District of California

### 3.     2014 Proxy Statement

Apple issued a definitive proxy statement on January 10, 2014 (the "Proxy Statement" or the "2014 Proxy").  FAC ¶ 100.  The Proxy Statement solicited Apple shareholders' votes on issues including the re-election of non-party Campbell and defendants Cook, Drexler, Iger, Jung, and Levinson to Apple's board of directors (the "Board").  *Id.*  Regarding the recommended re-election of the directors, the Proxy Statement discussed the directors' experience and qualifications, but did not disclose that the DOJ had been investigating Apple's potential violations of the antitrust laws or that Apple was potentially in danger of criminal charges and civil liability based on the anti-poaching practices.  *Id.* ¶¶ 101, 105.  These defendants were subsequently re-elected.  *See id.* ¶ 106.

Plaintiff further alleges that the 2014 Proxy affirmatively misrepresented that (1) the Board was actively supervising management to ensure compliance with all legal and ethical obligations and (2) the Board and the Audit Committee (then consisting of directors Campbell, Levinson, Iger, and Ronald D. Sugar) were effectively reviewing the key enterprise risks facing Apple and ensuring that management's conduct did not pose an excessive risk to the company.  *Id.* ¶¶ 102–03.  The Proxy Statement also recommended that stockholders vote in favor of an employee stock plan, stating that Apple's "future success depends on its ability to attract and retain high-caliber employees." *Id.* ¶ 104.

### 4.     Board Membership

When Plaintiff first brought this action, Apple's Board consisted of the following eight individuals:  defendants Cook, Drexler, Levinson, Iger, and Jung, and non-parties Albert Gore, Jr., Ronald D. Sugar, and Susan L. Wagner.  *See* FAC ¶ 118.

At the time Plaintiff filed the FAC on June 27, 2023, the following nine individuals comprised Apple's Board (the "2023 Board"):  defendants Cook, Levinson, and Jung, and non-parties Gore, Sugar, Wagner, James A. Bell, Alex Gorsky, and Monica Lozano.  *See id.*  Plaintiff did not make a demand on the 2023 Board.  *See id.* ¶ 139.  The Court notes the following pertinent allegations as to defendants Cook, Levinson, and Jung and non-parties Gore, Wagner, and Sugar.

United States District Court
Northern District of California

### a.   Cook

Defendant Timothy Cook has held executive roles at Apple since 1998.  *See* FAC ¶ 21.  In 2005, Cook became Apple's COO and joined the Board.  *See id.*  He also joined the board of directors of Nike, Inc. ("Nike") in the same year.  *See id.* ¶ 22.  Cook replaced Steve Jobs as Apple's CEO in August 2011.  *See id.* ¶ 21.

### b.   Levinson

Defendant Arthur D. Levinson became a member of Apple's Board in 2000, and he became its chair in November 2011.  *Id.* ¶ 32.  Plaintiff additionally alleges that Levinson was Genentech Inc.'s ("Genentech") CEO from 1995 to 1999, and the chair of Genentech's board of directors since 1999.  *Id.* ¶ 33.  Levinson was also a member of Google's board of directors from 2004 to 2009.  *Id.* ¶ 34.

### c.   Jung

Plaintiff alleges that Defendant Andrea Jung has been a director on Apple's Board since January 2008, and that she was Apple's "co-lead director" from 2009 to 2011.  *See* FAC ¶ 40.  Plaintiff further alleges that Jung signed Apple's November 5, 2008 Form 10-K, which disclosed that the reduction of stock-based awards issued to employees "could negatively impact [Apple's] ability to attract and retain key personnel."  *Id.* ¶ 151.

Jung has been a member of the Apple Board's Compensation Committee since the end of 2009, and the committee's chair since 2011.  *See id.* ¶ 40.  Plaintiff alleges that non-party Board member Gore gave a 2011 media interview in which he stated that the Compensation Committee "pays 'real close attention' to how Apple attracts world-class talent."  *See id.* ¶ 151 (citation omitted).

Additionally, Jung has held various senior positions at Avon Products, Inc. ("Avon"), including serving as Avon's chairperson and CEO between 1999 and 2012. *See id.* ¶ 148.  Plaintiff alleges that Jung left Avon in 2012, when Avon was subject to multiple investigations by government agencies, including the SEC, stemming from allegations of Avon's violations of U.S. laws in China and Latin America.  *See id.*

1

### d. Gore

2

Non-party Al Gore, Jr. joined Apple's Board in 2003 and has been on the Compensation

3

Committee since 2004.  *See* FAC ¶ 153.  Like Jung, Gore signed Apple's November 5, 2008 Form

4

10-K.  *See id.* ¶ 155.  Plaintiff also alleges that Gore has served as a Senior Advisor to Google

5

since at least 2001, and that he has maintained a close relationship with Google's co-founders,

6

Sergey Brin and Larry Page, both of whom Gore has known since they were 27 years old.[2]  *See id.*

7

¶ 152.

8

### e. Wagner

9

Non-party Susan Wagner joined Apple's Board in 2014, and has been on the Audit and

10

Finance Compensation Committee since then.  *See id.* ¶ 156.  Plaintiff alleges that Wagner is a co-

11

founder and director of BlackRock, Inc. ("BlackRock"), which is Apple's second largest

12

shareholder.  *See id.*  Wagner served as BlackRock's Vice Chairperson between January 2006 and

13

July 2012, and additionally as the company's COO and Head of Corporate Strategy.  *See id.*

14

### f. Sugar

15

Non-party Ronald D. Sugar has been a member of the Board since November 17, 2010.

16

*See* FAC ¶ 158.  Plaintiff alleges that Sugar maintains or maintained "numerous professional and

17

personal relationships with other members of the Board, including Jobs," as evidenced by Jobs's

18

complimentary statements about Sugar when Sugar joined the Board, and Sugar's response that he

19

has "always had enormous admiration for the people of Apple; . . . [i]t is a special privilege to

20

serve on the board of such an amazing company."  *See id.* (alterations in original).

21

### B.    Procedural History

22

Plaintiff commenced this action in August 2014.  *See* Compl., ECF No. 1.  Defendants

23

initially moved to dismiss the Complaint in January 2015.  *See* ECF No. 35.  In March 2015,

24

Defendants moved to stay this action pending resolution of three related shareholder derivative

25

actions that had been previously filed in California Superior Court, County of Santa Clara County

26

27

[2] Plaintiff does not provide either Brin's or Page's current age.

28

Case No.: 14-cv-03634-EJD

ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1    and consolidated as *In re Apple, Inc. Derivative Litigation*, lead case no. 1-14-CV-262174 (the

2    "State Court Consolidated Action").  *See* ECF No. 50.  In May 2015, the Court granted

3    Defendants' motion to stay and accordingly denied Defendants' motion to dismiss without

4    prejudice to refiling the motion.  *See* ECF No. 59 ("Stay Order").  The Court required the parties

5    to submit a joint status report regarding the status of the State Court Consolidated Action every

6    three months, as well as a joint notice informing the Court within 10 days of either (1) a resolution

7    of the State Court Consolidated Action through settlement or other informal means or (2) a final

8    ruling on the demand futility issue.  *See* Stay Order at 9.  Plaintiff appealed the Stay Order, and the

9    Ninth Circuit dismissed the appeal for lack of jurisdiction over a non-appealable order.  *See* ECF

10    Nos. 60, 69, 75.

11         As the State Court Consolidated Action unfolded, the Court thrice continued the stay—the

12    first stipulated, the second requested by Defendants and opposed by Plaintiff, and the third

13    requested by Plaintiff and opposed by Defendants.  *See* ECF Nos. 79–80, 91–92, 97–98.  On

14    August 27, 2021, the California Court of Appeal issued an order (the "2021 Appellate Order")

15    affirming the Superior Court's dismissal of the Third Amended Consolidated Complaint (the

16    "State Court TACC") without leave to amend, reasoning that the plaintiffs (the "State Court

17    Plaintiffs") had failed to sufficiently plead demand futility with respect to Apple's Board as it was

18    comprised when the State Court Plaintiffs filed the TACC in March 2018 (the "2018 Board").  *See*

19    Decl. of Jorge deNeve ("deNeve Decl."), Exh. D ("2021 App. Order"), ECF No. 131-1; *see id.*,

20    Exh. G ("TACC"), ECF No. 131-1.[3]  On December 31, 2021, the parties notified the Court of the

21    2021 Appellate Order.  *See* ECF No. 110.  The Court subsequently lifted the stay, and Defendants

22    filed a motion to dismiss the Complaint in May 2022, pursuant to the parties' stipulated briefing

23    schedule.  *See* ECF No. 119.  The Court issued an order granting the motion with leave to amend

24    (the "Prior MTD Order"), *see* ECF No. 125, and Plaintiff filed the FAC on June 27, 2023.

25    Defendants then filed the instant Motion on August 1, 2023.  *See* Mot.  The Motion was fully

26

27    _____

      [3] As discussed below, *see infra*, at Part III, the Court takes judicial notice of these documents.

28    Case No.: 14-cv-03634-EJD
      ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1  briefed on September 22, 2023.  *See* Opp'n; Reply.  The Court took the Motion under submission

2  without oral argument on October 23, 2023.  *See* ECF No. 135.

3  **II.    LEGAL STANDARDS**

4  **A.    Derivative Suits and Federal Rule of Civil Procedure 23.1**

5  "Generally speaking, a corporation, not its shareholders, has the sole right to pursue

6  litigation for injuries suffered by the corporation."  *In re Polycom, Inc.*, 78 F. Supp. 3d 1006, 1011

7  (N.D. Cal. 2015) (citing *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir 2008)).  However, an

8  individual shareholder may bring a derivative "suit to enforce a *corporate* cause of action against

9  officers, directors, and third parties."  *Id.* at 1012 (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500

10  U.S. 90, 95 (1991)) (emphasis in original).  "The theory in a derivative suit is that a corporation's

11  board has been so faithless to investors' interests that investors must be allowed to pursue a claim

12  in the corporation's name."  *Id.* (quoting *Robert F. Booth Tr. v. Crowley*, 687 F.3d 314, 316–17

13  (7th Cir. 2012)).

14  Federal Rule of Civil Procedure 23.1 establishes pleading requirements for derivative suits.

15  *See* Fed. R. Civ. P. 23.1; *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir. 1987)

16  (citation omitted); *see also Johnson v. Hui*, 752 F. Supp. 909, 911 (N.D. Cal. 1990) (noting Rule

17  23.1 requirements are not "merely a technical pleading hurdle," but rather "based on a

18  fundamental tenet of American corporate law that places the responsibility for making decisions in

19  the hands of the board of directors") (citation omitted).  As relevant here, Rule 23.1 requires that

20  the shareholder plaintiff "either demand action from the corporation's directors before filing a

21  shareholder derivative suit, or plead with particularity the reasons why such demand would have

22  been futile."  *Arduini v. Hart*, 774 F.3d 622, 628 (9th Cir. 2014); *see also* Fed. R. Civ. P.

23  23.1(b)(3); *Johnson*, 752 F. Supp. at 911 ("Rule 23.1 thus codifies the long-standing requirement

24  that a plaintiff who pursues the extraordinary remedy of a derivative suit make demand upon [the]

25  corporation's directors.") (citation omitted).

26  **B.    Federal Rule of Civil Procedure 12(b)(6)**

27  Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails

28  Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

8

to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts permitting the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The allegations must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  When determining whether a claim has been stated, a district court's review is limited to the face of the complaint and judicially noticeable information.  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). The court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). But the court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

### C.    Issue Preclusion

"A party may raise the affirmative defense of collateral estoppel, also known as issue preclusion, by way of a motion to dismiss under Rule 12(b)(6)."  *Pandkhou v. Prudential Ins. Co.*, No. 21-cv-00700, 2022 WL 2716519, at *1 (N.D. Cal. July 13, 2022) (citation omitted); *see also Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) ("Ordinarily affirmative defenses may not be raised by motion to dismiss . . . but this is not true when, as here, the defense raises no disputed issues of fact.") (internal citations omitted).  The doctrine of issue preclusion arises out of the United States Constitution's Full Faith and Credit Clause, which, "[a]s implemented under 28 U.S.C. § 1738, [requires that] federal courts . . . 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'"  *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1130 (9th Cir. 2019) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

United States District Court
Northern District of California

Accordingly, where a California appellate court's judgment is the purported basis for an issue preclusion argument, a federal court "must give the same preclusive effect to the California Court of Appeal's judgment as California courts would."  *Cook v. Harding*, 879 F.3d 1035, 1041 (9th Cir. 2018) (citation omitted).  California law recognizes that "[i]ssue preclusion operates as a shield against one who was a party to the prior action to prevent that party from relitigating an issue already settled in the previous case."  *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 827 (2015).  In *Lucido v. Superior Court*, the California Supreme Court set forth the showing required for a party to successfully assert issue preclusion:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. [Fifth], the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

51 Cal. 3d 335, 341 (1990).  If these five "threshold requirements" are met, the court should "look[] to the public policies underlying the doctrine"—*i.e.*, "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation"—to determine whether issue preclusion would be "fair to the parties and constitute sound judicial policy."  *Id.* at 342–43.

### III.    REQUEST FOR JUDICIAL NOTICE

Defendants request the Court take judicial notice of seven documents.  *See* Req. Jud. Not. ("RJN"), ECF No. 131-2; *see also* Decl. of Jorge deNeve ("deNeve Decl."), Exhs. A–G, ECF No. 131-1.  These documents may be categorized as follows:  documents filed in federal and state court actions, *see* deNeve Decl. ¶¶ 2, 4–5, 8 & Exhs. A, C, D, G; a DOJ press release issued on September 24, 2010, *see id.* ¶ 3 & Exh. B; Apple's Restated Articles of Incorporation, filed with the California Secretary of State on June 6, 2014 and as amended and restated to that date, *see id.* ¶ 6 & Exh. E; and Apple's Definitive Proxy Statement filed with the SEC on January 10, 2014, *see id.* ¶ 7 & Exh. F.  Plaintiff does not oppose Defendants' request for judicial notice.  *See* Opp'n.

A district court may consider material outside the pleadings without converting a motion to

United States District Court
Northern District of California

1    dismiss into a motion for summary judgment under either of two doctrines, namely, the doctrine of

2    judicial notice pursuant to Federal Rule of Evidence 201 and the judicially created doctrine of

3    incorporation by reference.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998, 1002

4    (9th Cir. 2018).  Under Federal Rule of Evidence 201, a court may judicially notice a fact that is

5    "not subject to reasonable dispute," *i.e.*, a fact that is "generally known," or "can be accurately and

6    readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid.

7    201(b)(1)–(2).  If a judicially noticeable document contains disputed facts, the court may notice

8    the document, but not the disputed facts therein.  *Khoja*, 899 F.3d at 999 ("[A] court cannot take

9    judicial notice of disputed facts contained in [judicially noticeable] public records.") (citation

10   omitted).  The incorporation by reference doctrine "treats certain documents as though they are

11   part of the complaint itself."  *Id.* at 1002.  That is, a court may consider a document "if the plaintiff

12   refers extensively to the document or the document forms the basis of the plaintiff's claim."

13   *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  A court generally "may assume an

14   incorporated document's contents are true for purposes of a motion to dismiss under Rule

15   12(b)(6)," but "it is improper to assume the truth of an incorporated document if such assumptions

16   only serve to dispute facts stated in a well-pleaded complaint."  *Khoja*, 899 F.3d at 1003 (internal

17   quotations omitted).

18          Defendants argue that the DOJ press release and the 2014 Proxy are incorporated by

19   reference into the FAC, and that the remaining documents are judicially noticeable under Federal

20   Rule of Evidence 201.  *See* RJN 3–5.  The Court agrees.  Plaintiff's suit arises out of Defendants'

21   alleged failure to inform shareholders in the 2014 Proxy of the DOJ's investigation into the hiring

22   practices of Apple and other companies and the resulting settlement, and the FAC liberally quotes

23   both the 2014 Proxy and the September 24, 1010 press release.  *See* FAC ¶¶ 5–6, 97, 100–07.  The

24   Court accordingly finds that these two documents are incorporated by reference into the FAC.

25   *See, e.g.*, *Ritchie*, 342 F.3d at 908.

26          The remaining documents are the complaint filed by the DOJ on September 24, 2010

27   (concurrently with issuing the press release regarding the settlement of the action); the final

28   Case No.: 14-cv-03634-EJD
     ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.
                                         11

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

judgment entered in the DOJ's action on March 18, 2011; the State Court TACC, filed on November 14, 2018 in *In re Apple, Inc. Shareholder Derivative Litigation*, Case No. 1-14-CV-262174 (Santa Clara County Superior Court); the 2021 Appellate Order, filed on August 27, 2021 in *Krawczyk v. Cook et al.*, Case No. H046506 (California Court of Appeal, Sixth Appellate District) (Santa Clara County Superior, Court No. 1-14-CV-262174); and Apple's Restated Articles of Incorporation.  As such, these documents are all matters of public record filed in state or federal courts or with an administrative agency, and their existence and contents—although not the truth of any disputed facts therein—are judicially noticeable.  *See, e.g.*, *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); *Huipio v. City of San Jose*, No. 21-CV-07838, 2023 WL 4409849, at *3 n.2 (N.D. Cal. July 7, 2023) ("Court records are properly the subject of judicial notice."); *Motul S.A. v. USA Wholesale Lubricant, Inc.*, --- F. Supp. 3d ----, 2023 WL 5061945, at *4 (N.D. Cal. Aug. 8, 2023) ("Filings with the California Secretary of State are also proper subjects of judicial notice because they are matters of public record whose accuracy is not subject to reasonable dispute.") (citations omitted).

Accordingly, the Court GRANTS in full Defendants' request for judicial notice.

## IV.    DISCUSSION

Defendants move to dismiss the FAC under Federal Rule of Civil Procedure 12 on the grounds that:  (1) Plaintiff's claims are barred by the doctrine of issue preclusion; (2) Plaintiff fails to meet the derivative action pleading requirements established in Federal Rule of Civil Procedure 23.1; and (3) Plaintiff's claims are either exculpated by Apple's Articles of Incorporation or time-barred.  *See* Mot. 9–10.[4]  The Court addresses these arguments in turn.

### A.    Issue Preclusion

Defendants first argue that the FAC must be dismissed because the 2021 Appellate Order

---

[4] The Court notes that Defendants' Motion includes an introductory notice and statement of issues separate from the main memorandum.  This district's local rules require that these elements of a brief all be included within the 25-page limit.  *See* Civil L.R. 7-2(b).  Similarly, Plaintiff's statement of issues in the Opposition should be part of the main memorandum.  *See* Civil L.R. 7-4.

1    bars Plaintiff from establishing demand futility under the doctrine of issue preclusion.  *See* Mot.

2    10–15.  As noted above, under California law, issue preclusion applies if (1) the party asserting

3    preclusion can show that (a) the issue is identical to the issue decided in the previous proceeding;

4    (b) the issue was "actually litigated"; (c) the issue was "necessarily decided"; (d) the decision was

5    "final and on the merits"; and (e) that "the party against whom preclusion is sought must be the

6    same as, or in privity with, the party to the former proceeding"; and (2) that preclusion would not

7    run afoul of the public policies underlying the doctrine.  *See supra*, at Part II(C) (quoting *Lucido*,

8    51 Cal. 3d at 341.

9        Defendants argue that the 2021 Appellate Order's evaluation of demand futility was

10   identical (for issue preclusion purposes) to the demand futility issue here; that demand futility was

11   actually litigated and necessarily decided in the 2021 Appellate Order, which is final and was

12   decided on the merits; that Plaintiff is in privity with the State Court Plaintiffs and thus bound by

13   the 2021 Appellate Order; and that finding Plaintiff to be barred from establishing demand futility

14   here would be consistent with the public policies underlying issue preclusion.  *See id.*  Plaintiffs

15   counter that Defendants are unable to show two of the five threshold requirements for issue

16   preclusion—that the demand futility issues are identical and that Plaintiff is in privity with the

17   State Court Plaintiffs—and further argue that the application of issue preclusion would violate due

18   process.  *See* Opp'n 14–20.

19       The Court addresses the five threshold requirements before turning to the public policy

20   questions.

21                    **1.    Whether the Demand Futility Issues are "Identical"**

22       Under California law, "[t]he identical issue requirement addresses whether identical factual

23   allegations are at stake in the two proceedings, not whether the ultimate issues or dispositions are

24   the same."  *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511–12 (2009) (quotation marks and

25   internal citation omitted) (quoting *Lucido*, 51 Cal. 3d at 342); *see also Cook*, 879 F.3d at 1041

26   (citing *Hernandez*, 46 Cal. 4th at 511–12); *but cf. Arduini*, 774 F.3d at 629 ("Under Nevada law,

27   the underlying demand futility *allegations* need not be identical before issue preclusion applies.

28   Case No.: 14-cv-03634-EJD
     ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1   The question is, rather, whether the 'same ultimate issue' was decided in the prior case.") (citation

2   omitted) (emphasis in original).[5]   However, California courts have recognized that "[a]lthough the

3   focus is on the identity of the specific issue litigated and decided on the facts presented . . . [a]n

4   issue decided in a prior proceeding establishes collateral estoppel even if some factual matters or

5   legal theories that could have been presented *with respect to that issue* were not presented."

6   *Textron Inc. v. Travelers Cas. & Sur. Co.*, 45 Cal. App. 5th 733, 747 (2020) (quoting *Bridgeford v.*

7   *Pac. Health Corp.*, 202 Cal. App. 4th 1034, 1042 (2012)).

8        Defendants argue that the demand futility issue addressed in the 2021 Appellate Order is

9   identical—for the purposes of issue preclusion—to the demand futility issue presented in this

10   action.  Before the Court addresses the merits of this argument, it briefly outlines California's

11   demand futility framework, which the 2021 Appellate Order applied and which this Court must

12   apply if it finds that issue preclusion is not applicable here.

13                   **a.**       **Demand Futility Analytical Framework**

14        "A court looks to the law of the state of incorporation to determine when demand would be

15   futile." *Arduini*, 774 F.3d at 628 (citing *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir.

16   2014)).  Apple is a California corporation, *see* FAC ¶ 20, and thus California's demand futility

17   framework applies.  "California's demand requirement under [Cal. Corp. Code §] 800(b)(2) is

18   similar to the federal rule and requires that the plaintiff in a shareholder derivative suit 'allege[ ] in

19   the complaint with particularity plaintiff's efforts to secure from the board such action as plaintiff

20   desires, or the reasons for not making such effort.'" *Bader v. Anderson*, 179 Cal. App. 4th 775,

21   790 (2009).  "[D]emand typically is deemed futile when a majority of the directors have

22   participated in or approved the alleged wrongdoing, [] or are otherwise financially interested in the

23   challenged transactions." *Id.*  If a board has an even number of members, the demand futility

24   requirement is met if the plaintiff shows that half of the board could not fairly evaluate a demand.

25

26   ─────────────────

27   [5] Defendants point out that the *Arduini* court noted that "California and Nevada law regarding
issue preclusion are similar." *See* Mot. 12 (quoting *Arduini*, 774 F.3d at 634 n.10).  That
statement was made with respect to the privity analysis. *See Arduini*, 774 F.3d at 634 & n.10.

28   Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1    *See In re Oracle Corp. Derivative Litig.*, 824 A.2d 917, 944 n.69 (Del. Ch. 2003) (citation

2    omitted); *see also Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 586 n.5

3    (2001) ("[W]e may properly rely on corporate law [regarding demand futility] developed in the

4    state of Delaware given that it is identical to California corporate law for all practical purposes.").

5                  **b.**      **Identical Issue Analysis**

6                    **i.**      **Parties' Arguments**

7        Defendants argue that the 2021 Appellate Order's rejection of the State Court Plaintiffs'

8    demand futility arguments with respect to the 2018 Board "precludes Plaintiff from litigating

9    whether the 2023 Board could have fairly considered a litigation demand because Plaintiff's

10    demand futility allegations are identical, for issue preclusion purposes, to the State Court

11    Plaintiffs' demand futility allegations." Mot. 11. Specifically, Defendants argue that the 2021

12    Appellate Order found that demand was not futile as to five of the eight members of the 2018

13    Board—Sugar, Bell, Wagner, Gore, and Jung[6]—and that these same five individuals constitute a

14    majority of the 2023 Board. *See id.* Defendants further note that the TACC and the FAC involve

15    the same allegations against these Board members, and accordingly argue that the demand futility

16    issue addressed in the 2021 Appellate Order is identical to that here. *See id.* at 11–13.

17        Plaintiff responds that the Court should adhere to the reasoning in its Prior MTD Order,

18    which held that the demand futility issue raised in Defendants' prior motion to dismiss was not

19    identical to the issue evaluated in the 2021 Appellate Order. *See* Opp'n 15. Plaintiff argues that

20    the 2021 Appellate Order only addressed the State Court Plaintiffs' allegations with respect to

21    Gore and Jung, so that, even accepting the Court of Appeal's holdings as to Gore and Jung, the

22    issues are not identical because the 2021 Appellate Order does not remove Sugar, Bell, and

23    Wagner from consideration here. *See id.* Plaintiff further argues that the issues are not identical

24    because the demand futility analysis requires that the Court independently assess demand futility

25    as to all seven members of the 2023 Board aside from Gore and Jung, so that the 2021 Appellate

26

27    _____

      [6] Cook, Levinson, and Iger made up the remainder of the 2018 Board. *See* 2021 App. Order 6.

28    Case No.: 14-cv-03634-EJD
      ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.
                                  15

United States District Court
Northern District of California

Order lacks any preclusive effect.  *See id.*  In addition, Plaintiff argues that the issues are not identical because the FAC—unlike the TACC—asserts a federal claim for violation of § 14(a) of the Exchange Act, so that the 2021 Appellate Order "never analyzed the demand issue regarding a Section 14(a) claim."  *Id.* at 16.

### ii.   Relevance of Prior MTD Order's Analysis

At the outset, the Court notes that the Prior MTD Order's analysis as to the identical nature of the issues is not applicable here.  The question presently before the Court requires comparison of the 2023 Board alleged in the FAC and the 2018 Board discussed in the 2021 Appellate Order, but the Prior MTD Order compared the 2018 Board with the Apple Board at the time the initial complaint was filed in 2014 (the "2014 Board").  *See Klein v. Cook*, No. 14-cv-03634, 2023 WL 3726500, at *6–7 (N.D. Cal. May 30, 2023).  The 2014 Board was comprised of the same eight members as the 2018 Board, except that Drexler was a Board member in 2014 who had been replaced by Bell in the 2018 Board.  *See id.* at *7.  The 2021 Appellate Order's finding that demand was not futile as to Bell was therefore not relevant to the Court's evaluation of the 2014 Board.  Accordingly, even giving full effect to the 2021 Appellate Order's finding that demand was not futile as to Sugar, Bell, Wagner, Gore, and Jung, the composition of the 2014 Board— which included Drexler rather than Bell—afforded Plaintiff the opportunity to show that demand was futile for half of the eight-member Board, *i.e.*, Cook, Levinson, Iger, and Drexler.  *See id.*  By contrast, the 2023 Board is comprised of nine members—Cook, Levinson, Sugar, Bell, Wagner, Gore, Jung, Gorsky, and Lozano—including the five individuals serving on the 2018 Board for whom the 2021 Appellate Order found that demand was not futile.  *See* FAC ¶ 139; 2021 App. Order 8 nn.4, 6; *id.* at 14.  Giving full effect here to the 2021 Appellate Order's finding that demand was not futile as to Sugar, Bell, Wagner, Gore, and Jung would therefore prevent Plaintiff from showing that demand was futile as to a majority of the 2023 Board.

### iii.   Evaluation of FAC's and TACC's Demand Futility Allegations

The question, then, is whether the FAC's allegations as to Sugar, Bell, Wagner, Gore, and

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Jung are identical—for issue preclusion purposes—to the TACC's allegations as to the same five

2    persons.  *See Hernandez*, 46 Cal. 4th at 512.  With respect to Wagner, Gore, and Jung, Defendants

3    have created charts comparing the TACC's and FAC's allegations of demand futility for these

4    three directors, and argue that the charts demonstrate that the FAC's allegations are identical, or

5    nearly identical, to those in the TACC.  *See* Mot. 6–8 (allegation charts), 12.  The Court agrees.

6    *Compare, e.g.*, FAC ¶¶ 149–51 (Jung) ; *id.* ¶¶ 152–55 (Gore); *id.* ¶¶ 156–57 (Wagner), *with*

7    TACC ¶¶ 162, 238, 191(iv) (Jung); *id.* ¶¶ 162, 186, 191(iii), 234 (Gore); *id.* ¶¶ 241–42 (Wagner).

8    Further, Plaintiff does not dispute that the facts alleged are identical, or point to additional

9    allegations that are distinct from those in the TACC.  *See generally* Opp'n.  In fact, Plaintiff cites

10   to these identical allegations as the amendments to the FAC that "bolster[] the demand-futility

11   allegations regarding Jung, Gore, and Wagner."  *Id.* at 1 (citing FAC ¶¶ 150–57).[7]

12        The TACC made no demand futility allegations regarding Sugar or Bell.  *See* 2021 App.

13   Order 8 n.6; *see generally* TAC.  The FAC likewise makes no demand futility allegations as to

14   Bell, and in that respect the factual basis for the 2021 Appellate Order's decision on demand

15   futility is identical to that before the Court today.  However, unlike the State Court Plaintiffs'

16   TACC, the FAC here alleges that demand was futile as to Sugar.  *See* FAC ¶ 158; *see also* 2021

17   App. Order 8 n.6 ("The TAC made no allegations concerning Sugar or Bell, the two remaining

18   members of the 2018 Board.").  Specifically, Plaintiff alleges that Sugar (1) has been a member of

19   the Board since November 17, 2010; (2) maintains or maintained "numerous professional and

20   personal relationships with other members of the Board, including Jobs"; (3) was complimentarily

21   introduced by Jobs when Sugar joined the Board; and (4) responded to Jobs's introduction by

22   stating that he has "always had enormous admiration for the people of Apple" and that he felt it "a

23   special privilege to serve on the board of such an amazing company."  *See* FAC ¶ 158.  Although

24

25

26

27

---

[7] The Court notes that counsel for the State Court Plaintiffs—who are listed on the TACC's caption page, *see* TACC—associated as counsel for Plaintiff in this action shortly before Plaintiff filed the FAC, *see* ECF No. 128, and are listed on the FAC's caption page, *see* FAC.  It is perhaps unsurprising, then, that the allegations in the TACC and the FAC are nearly identical as to Jung, Gore, and Wagner.

28   Case No.: 14-cv-03634-EJD
     ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

these facts were not alleged in the TACC, they would have been available to the State Court Plaintiffs prior to their filing of the TACC in March 2018. The demand futility issue as to Sugar in both the prior and present cases therefore "turn[s] on the same underlying universe of facts regarding the acts" of Sugar and Jobs—even if State Court Plaintiffs did not "point to certain specific certain specific facts . . . on which [Plaintiff] now rel[ies]"—so that the issue is identical between the cases for demand futility purposes. *Thompson v. Crestbrook Ins. Co.*, 81 Cal. App. 5th 115, 127 (2022); *see also LeBoyer v. Greenspan*, No. CV 03-5603, 2007 WL 4287646, at *2 (C.D. Cal. June 13, 2007) (assessing issue preclusion as to demand futility and noting for "actually litigated" element that "[t]o the extent that plaintiff has additional evidence, he has shown no reason why this evidence could not have been offered in the state case") (citation omitted).

Plaintiff's remaining argument is that the demand futility issue here is not identical to that evaluated in the 2021 Appellate Order because the FAC, unlike the TACC, alleges a Section 14(a) claim. *See* Opp'n 16. This argument rests on the principle that demand futility is evaluated on a claim-by-claim basis.[8] *See id.* (citing *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003); *Oswald ex rel. Identiv, Inc. v. Humphreys*, 806 F. App'x 577, 579 (9th Cir. 2020)). However, this argument is premature, as the analysis presently before the Court with respect to issue preclusion is whether "identical factual allegations are at stake in the two proceedings, not whether the ultimate issues . . . are the same." *Hernandez*, 46 Cal. 4th at 511–12; *cf. Beam*, 833 A.3d at 976–84 (evaluating demand futility outside of issue preclusion context); *Oswald*, 806 F. App'x at 579–81 (same). Plaintiff does not suggest that the facts relevant to demand futility as to the Section 14(a) claim are distinct from those facts relevant to demand futility with regard to the state law claims. *See* Opp'n. The Court also notes that although the TACC did not assert a Section 14(a) claim, the State Court Plaintiffs nonetheless

---

[8] Despite his purported reliance on this principle, the Court notes that Plaintiff appears to treat new state law claims differently—without explanation—from new federal claims, as he makes no mention of the fact that the FAC asserts three state law claims not alleged in the TACC. *Compare* FAC ¶¶ 181–95 (asserting state law claims for gross mismanagement, waste of corporate assets, and breach of the duty of honest services), *with* TACC ¶¶ 250–65 (asserting only California causes of action for breach of fiduciary duty and for indemnification and contribution).

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.

1
2
3
4
5
6
7
8

alleged that the defendants failed to disclose the DOJ's investigation, or the subsequent lawsuit, settlement, and final judgment, in the 2014 Proxy.  *See* TACC ¶ 103.  Most importantly, however, the demand futility issue in this action, including with respect to the Section 14(a) claim, "turn[s] on the same underlying universe of facts" as the demand futility analysis in the 2021 Appellate Order.  *Thompson*, 81 Cal. App. 5th at 127.  Thus, because "the factual predicate of the legal issue decided in the prior case [is] sufficient to frame the identical legal issue in the current case," the issues are identical even though this action "involves other facts or legal theories that were not specifically raised in the prior case."  *Textron*, 45 Cal. App. 5th at 747.

9
10

Accordingly, for the reasons discussed above, the Court finds that the demand futility issues in this action and the State Court Consolidated Action to be identical.

11
12

**2.      Whether Demand Futility was "Actually Litigated" and "Necessarily Decided"**

13
14
15
16
17
18
19
20
21
22

The Ninth Circuit has recognized that the second and third threshold requirements for issue preclusion under California law—that the issue have been actually litigated and necessarily decided—are interrelated.  *See Cook*, 879 F.3d at 1042.  "In the context of issue preclusion, an issue is actually litigated 'when it is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'"  *Id.* (alterations omitted) (quoting *People v. Sims*, 32 Cal. 3d 468, 484 (1982)).  "To be necessarily decided, California law requires 'only that the issue not have been "entirely unnecessary" to the judgment in the initial proceeding.'"  *Id.* (quoting *Lucido*, 51 Cal. 3d at 342).  Therefore, "[i]nasmuch as an issue was necessarily decided in a prior proceeding, it was also actually litigated."  *Id.* (citing *In re Baldwin*, 249 F.3d 912, 919 (9th Cir. 2001); *In re Harmon*, 250 F.3d 1240, 1248 n.9 (9th Cir. 2001)).

23
24
25
26
27

Plaintiff does not contest Defendants' argument that demand futility was actually litigated in the State Court Consolidated Action and necessarily decided in the 2021 Appellate Order.  *See* Mot. 13; *see generally* Opp'n.  The defendants in the State Court Consolidated Action raised the demand futility issue before both the Superior Court and the Court of Appeal; submitted the issue for determination on demurrer and subsequently in defending the appeal filed by one of the state

28

United States District Court
Northern District of California

court shareholder plaintiffs; and the Court of Appeal affirmed the Superior Court's judgment in sustaining the demurrer without leave to amend "on the ground that plaintiff had failed to adequately plead demand futility."  *See* 2021 App. Order 1.  Accordingly, the demand futility issue was necessarily decided by, and thus actually litigated before, the California Court of Appeal.  *See Cook*, 879 F.3d at 1042; *LeBoyer*, 2007 WL 4287646, at *2 ("[I]t is undisputable that the issue was necessarily decided. . . . [where the] decision dismissed the case with prejudice based only upon the issue of demand futility.").

### 3.      Whether the 2021 Appellate Order was "Final" and "Decided on the Merits"

The fourth threshold requirement for a finding of issue preclusion is that the purportedly preclusive decision have been final and decided on the merits.  *See Lucido*, 51 Cal. 3d at 341. "Under California law, a judgment is not final for the purposes of collateral estoppel until it is free from the potential of a direct attack, *i.e.* until no further direct appeal can be taken."  *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1105 n.3 (9th Cir. 2010) (citing *Abelson v. Nat'l Union Fire Ins. Co.*, 28 Cal. App. 4th 776, 787 (1994).  A decision is made "on the merits" if "the substance of the claim was tried and determined."  *Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 483 (2001) (alterations and citation omitted); *see also Ass'n of Irritated Residents v. Dep't of Conservation*, 11 Cal. App. 5th 1202, 1220 (2017) (explaining judgments not made on the merits where "the outcome was reached on procedural or technical grounds that did not resolve or depend on the claim's merits") (citations omitted).

Defendants argue that the 2021 Appellate Order is final because the Court of Appeal issued its remittitur on October 27, 2021, thereby foreclosing any further direct appeal, and that dismissals of derivative shareholder actions based on a failure to plead demand futility are consistently treated as having been made "on the merits" for issue preclusion purposes.  *See* Mot. 13–14 (citations omitted).  Plaintiff does not contest these arguments.  There is no dispute about the finality of the 2021 Appellate Order, and the Court concurs with those district courts that have evaluated issue preclusion under California law and determined that dismissals based on plaintiffs'

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.

failure to plead demand futility are "on the merits." *See LeBoyer*, 2007 WL 4287646, at *3

(reasoning that treatment of demand futility as procedural rather than substantive "would run

against the clear purpose of preclusion doctrines" because "it could be infinitely litigated . . . by

successive individual plaintiffs suing in a derivative capacity"); *Hamilton v. Advanced Micro*

*Devices*, No. 15-CV-1890, 2021 WL 1253654, at *6 (N.D. Cal. Apr. 5, 2021) ("The function of

the demand doctrine under Rule 23.1 in delimiting the respective powers of the individual

shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,'

not 'procedure.'") (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96–97 (1992)).

### 4.    Whether Plaintiff is in Privity with the State Court Plaintiffs

The fifth and last threshold element for a finding of issue preclusion requires that "the

party against whom preclusion is sought must be the same as, or in privity with, the party to the

former proceeding." *Lucido*, 51 Cal. 3d at 341 (citations omitted).  Defendants argue that Plaintiff

is in privity with the State Court Plaintiffs because he "purports to bring the same claims on

Apple's behalf under the same alleged facts." Mot. 14.  Plaintiff counters that each shareholder of

a corporation has an individual right to bring a derivative action, so that "shareholders [in a prior

action] who fail to establish their representative capacity can only act on their own behalf and are

not in privity with other shareholders." Opp'n 17 (citation omitted).

This Court, like others before it, "has found no California state court case addressing the

question of privity as between successive shareholder derivative plaintiffs." *Hamilton*, 2021 WL

1253654, at *7.  However, the Ninth Circuit—when faced with a similar dearth of state court

guidance with respect to Nevada law on issue preclusion with respect to demand futility—noted

that "the majority of courts that have addressed this issue have held that shareholders asserting

derivative suits are in privity." *Arduini*, 774 F.3d at 633; *see id.* at 634 n.10 (noting, in discussion

of privity, that "California and Nevada law regarding issue preclusion are similar"); *see also Cal.*

*State Teachers' Ret. Sys. v. Alvarez*, 179 A.3d 824, 848 (Del. 2018), *cert. denied*, 139 S. Ct. 177

(2018) ("The five federal circuit courts that have considered whether privity exists between sets of

successive derivative plaintiffs have all found the requisite privity under the applicable law,

<div style="float:left">United States District Court<br>Northern District of California</div>

1  whether state law or federal common law.").  Further, the Delaware Supreme Court has

2  specifically stated that "[u]nder California law . . . derivative stockholders are in privity with each

3  other because they act on behalf of the defendant corporation."  *See Pyott v. La. Mun. Police*

4  *Emps.' Ret. Sys.*, 74 A.3d 612, 614 (Del. 2013); *see also Heshejin v. Rostami*, 54 Cal. App. 5th

5  984, 996 (2020) (noting that each shareholder of a corporation bringing a derivative action is in

6  privity with the corporation).

7  　　　The cases cited by Plaintiff are inapposite and do not persuade the Court to deviate from

8  the weight of these authorities.  *See Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282,

9  298–99 (2004) (finding shareholder bringing direct fraud suit against law firm representing

10  acquiring company in merger transaction not in privity with other shareholders who had

11  previously brought their own direct suits for fraud); *In re First Energy S'holder Derivative Litig.*,

12  320 F. Supp. 2d 621 (N.D. Ohio 2004) (finding shareholder permitted to continue with suit based

13  on demand futility where prior shareholder had made demand, but where no prior finding of

14  demand futility had been made); *Kohls v. Kenetech Corp.*, 791 A.2d 763, 769 (Del. Ch. 2000)

15  (noting that "individual stockholder is not, solely because of potentially aligned interests,

16  presumed to act in the place of . . . the other stockholders," but where demand futility not at issue);

17  *Bader v. Goldman Sachs Grp., Inc.*, 455 F. App'x. 8, 10 (holding issue preclusion did not bar suit

18  on grounds that issues were not identical, without discussing privity).  And Plaintiff does not argue

19  that the State Court Plaintiffs were inadequate representatives, such that there can be no finding of

20  privity.  *See* Opp'n 17–18; *cf. Ji v. Van Heyningen*, No. CA 05–273, 2006 WL 2521440, at *4–5

21  (D.R.I. Aug. 29, 2006) (finding successive shareholders not in privity, but noting "relevant

22  distinction" from cases finding privity was "this Court's determination that the nonparty

23  shareholder plaintiff . . . was not adequately represented by the [prior] shareholder plaintiff").

24  　　　Accordingly, the Court finds that Plaintiff is in privity with the State Court Plaintiffs.  *See,*

25  *e.g.*, *Hamilton*, 2021 WL 1253654, at *8 ("Based on the overwhelming authority in the

26  shareholder derivative context, the Court concludes that privity between [current and prior

27  plaintiffs] is established.").

28  Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 5.      Public Policy Considerations

Even if a party asserting issue preclusion shows that all threshold requirements are satisfied, courts must review the public policies underlying the doctrine—*i.e.*, "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation"—to determine whether the application of issue preclusion "would be fair to the parties and constitute sound judicial policy." *Lucido*, 51 Cal. 3d at 343. Defendants argue that they have already litigated the issue of demand futility through repeated state court evaluations, and that the public policies outlined in *Lucido*, as well as the policy of repose and the central premise of demand futility law—that a corporation has the right to control its own legal claims—all require application of issue preclusion here. *See* Mot. 14–15 (citation omitted). Plaintiff argues that due process and the circumstances of this action foreclose an application of issue preclusion because the procedural history of this action—namely, that the action was stayed pending the resolution of the State Court Consolidated Action, which Plaintiff appealed—renders unfair and unreasonable a finding that the outcome of the State Court Consolidated Action now precludes Plaintiff from litigating his own case. *See* Opp'n 18–20.

The Court is sympathetic to Plaintiff's suggestion that he was made to wait on the sidelines while the State Court Plaintiffs litigated their case, and might now be bound by their defeat in the state courts. However, as Defendants point out, courts evaluating the application of issue preclusion in the shareholder derivative action context have consistently held that preclusion does not deprive subsequent shareholder plaintiffs of their due process rights, particularly where the subsequent shareholder plaintiff had sufficient notice of the prior action. *See, e.g.*, *Arduini*, 774 F.3d at 637–38 (rejecting argument that issue preclusion violated shareholder plaintiff's due process rights where there was no suggestion that prior shareholder plaintiff was an inadequate representative and subsequent shareholder plaintiff had notice of the prior proceedings); *Alvarez*, 179 A.3d at 840, 852–53 (reasoning that subsequent shareholder plaintiffs' due process rights are protected despite preclusion where interests were aligned and prior plaintiffs were adequate representatives). Here, Plaintiff has been well aware of the State Court Consolidated Action—for

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.

example, Plaintiff was aware of and litigated the reason for the stay, and later stipulated to continue the stay in exchange for receiving discovery produced in the State Court Consolidated Action. *See* ECF Nos. 79, 80. Further, as noted above, Plaintiff does not suggest that the State Court Plaintiffs were inadequate representatives. *See supra*, at Part IV(A)(4); *see* Opp'n 18–20. Plaintiff instead argues that the Supreme Court's holding in *Taylor v. Sturgell*, 553 U.S. 880 (2008)—that due process concerns prevented the application of issue preclusion to a successive plaintiff in a pair of Freedom of Information Act cases—must here result in a conclusion that each shareholder plaintiff must be permitted to litigate at least the first part of a derivative action. *See* Opp'n 19. But as noted by the Ninth Circuit in *Arduini*, the *Taylor* plaintiffs had no legal relationship to each other. *See Arduini*, 774 F.3d at 637. Here, the Court has found that Plaintiff is in privity with the State Court Plaintiffs. *See supra*, at Part IV(A)(4). As such, the Court finds that the application of issue preclusion here does not violate Plaintiff's due process rights.

The Court additionally finds that the public policies outlined by *Lucido* support the application of issue preclusion. The application of the doctrine preserves the integrity of the judicial system by giving full faith and credit to the state courts' judgments; promotes judicial economy by preventing repetitive litigation of issues already decided on nearly identical allegations; and—although the Court by no means suggests that Plaintiff is a vexatious litigant—protects Defendants from having to relitigate these claims with multiple successive plaintiffs. *See Lucido*, 51 Cal. 3d at 343.

Accordingly, because Defendants have shown that all five threshold requirements for issue preclusion are met, and that the relevant public policies support the application of the doctrine, the Court finds that the application of issue preclusion here as to the issue of demand futility "would be fair to the parties and constitute sound judicial policy." *Lucido*, 51 Cal. 3d at 343.

## B.      Conclusion

Because the Court finds that issue preclusion applies to the issue of demand futility and bars Plaintiff from meeting the pleading requirements under Federal Rule of Civil Procedure 23.1, it need not and does not address Defendants' remaining arguments in their Motion.

United States District Court
Northern District of California

**V.    ORDER**

For the foregoing reasons, the Court ORDERS as follows:

1. The California Court of Appeal's 2021 Appellate Order has a preclusive effect on Plaintiff's assertion of demand futility;

2. Plaintiff is accordingly barred from asserting demand futility in this action; and

3. Plaintiff's First Amended Complaint is DISMISSED WITHOUT LEAVE TO AMEND, because amendment would be futile in light of the Court's determination of issue preclusion.

4. Accordingly, the Clerk shall close this action.

**IT IS SO ORDERED.**

Dated: March 18, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 14-cv-03634-EJD
ORDER GRANTING MOTION TO DISMISS FIRST AM. COMPL.
25